JOSEPH P. ZEINER *vs.* MAYBELLE ZEINER.

MALTBIE, C. J., HAINES, HINMAN, AVERY and FOSTER, Js.

Argued May 9th—decided June 27th, 1935.

*David Cramer,* with whom was *Norman M. Dule,* for the appellant-appellee (defendant).

*Louis Y. Gaberman,* with whom was *Glen W. Fox,* for the appellant-appellee (plaintiff).

AVERY, J.   The plaintiff brought this action for an annulment of his marriage with the defendant and for divorce.   The annulment was sought upon the ground that the defendant induced the plaintiff to marry her as a result of false and fraudulent representations made by her for the purpose of deceiving him, and upon the further ground that previous to her marriage to him she had been married to Lawrence L. Long, which marriage had not been dissolved at the time of her marriage to the plaintiff.   A divorce was claimed on the ground of adultery.   The defendant filed an answer denying the material allegations of the complaint, and filed a cross-complaint asking for a divorce upon the ground of cruelty.   After trial, the court found for the defendant upon the issue of fraudulent contract and a prior marriage, and rendered judgment for the defendant upon these issues, from which the plaintiff has appealed.   The court, however, found for the plaintiff upon the issue of adultery and rendered judgment for the plaintiff upon that issue, from which the defendant has appealed.   If the plaintiff prevails upon the defendant's appeal he does not press his own appeal.   We therefore confine ourselves to a discussion of the defendant's appeal.

Both parties have asked for corrections in the finding but no change materially affecting the trial court's conclusion can be made. The plaintiff and defendant intermarried at Millerton, New York, September 13th, 1933. It was the plaintiff's second and the defendant's sixth marriage. Her first and third marriages had been terminated by divorce; her second and fifth by the death of the husband in each case; her fourth marriage was to Lawrence L. Long on March 31st, 1927. The latter took place in Dade County, Florida; the parties separated in 1930 and Long has since remarried and is living in Florida. No evidence of any divorce between him and the defendant appeared, nor was there any evidence to show that no such divorce had been granted. In her application for a license to marry the plaintiff, the defendant signed and made oath to the statement that the proposed marriage was her third and that her former husbands were dead. She made a similar statement to the plaintiff. Following the marriage, they went on a wedding trip lasting a week, and upon its conclusion went to live in a house owned by the plaintiff in Terryville in the town of Plymouth. The plaintiff's married daughter, her husband and three children were also living in this house. In addition to the daughter, the plaintiff had several sons. As a result of an investigation made by the sons regarding the defendant's past life, a family conference was held in a hall near their residence at which the plaintiff, defendant and the plaintiff's five adult children were present. This conference was held on the evening of October 3d, 1933, and lasted from about 8.30 to about 12.30 o'clock, during which time the defendant's former life was thoroughly discussed and she was subjected to considerable questioning concerning it, with the result that she was left in a nervous and excited condition and spent the remainder of the

night in a cottage on the plaintiff's property adjacent to the house in which they had been living.

On the following morning, she left Terryville in an automobile with a suit case containing her personal effects and went to the town of Cornwall, arriving there in the afternoon, where she went to a trailer or "house car" owned and occupied by Guarando Ferriole. At that time, she had funds only sufficient to pay her taxi fare from Terryville to Cornwall. Ferriole was a young man whom the defendant knew when she resided in the town of Washington before her marriage to the plaintiff. He was at that time working on a road construction job nearby and took his meals at her house and did work for her such as mowing her lawn and cutting wood. In August, 1933, he moved his trailer to Cornwall Bridge where he was then working on another road construction job. He ate and slept in the vehicle, which was about six and one half feet high, ten feet long and six feet wide and was mounted on wheels. It had two single cots or beds at one end a little less than two feet apart, both running lengthwise of the trailer and with no curtain between them. The trailer was in the vicinity of a construction job and near a building where a number of the workers lived. Upon her arrival, the defendant asked permission of Ferriole to stay for a few days until she felt better. She remained from the afternoon of October 4th until the night of October 7th. During this time the curtains in the windows were drawn at night and the lights were put out between 10 and 11 o'clock. During the day, Ferriole went to his work on the construction job, leaving early in the morning and returning at about 6.30 in the evening. The plaintiff and one of his sons, having learned of the whereabouts of the defendant, complained to the state police, one of whom visited the trailer about ten

o'clock on the evening of October 7th. It was in darkness when the officer arrived, and upon his trying to open the door he found it locked. In a few minutes the door was opened by Ferriole, who was dressed only in an undershirt and a pair of trousers. The defendant was lying on one of the cots with a house dress on and, at the suggestion of the officer, dressed behind a closet door. The bed clothes in each cot were disarranged. The officer thereupon arrested both the defendant and Ferriole. They remained under arrest until October 13th, 1933, when they were brought before a justice of the peace in the town of Cornwall upon the charge of lascivious carriage, to which each pleaded guilty.

Upon this state of facts, the trial court concluded that the defendant had committed adultery and rendered judgment for the plaintiff upon that ground. In her appeal, the defendant attacks this conclusion of the court and also assigns error in certain rulings upon evidence. As adulterous acts are naturally secret and clandestine, so proof thereof must usually be circumstantial and indirect. " 'To prove adultery by circumstantial evidence the circumstances must be such as to lead the guarded discretion of a reasonable and just man to a conclusion of guilt.' " *Neff* v *Neff*, 96 Conn. 273, 275, 114 Atl. 126. This rule requires, as in other civil cases, proof by a fair preponderance of the evidence. It is impossible to give any general rule as to what circumstances will or will not prove adultery, but they must be determined with reference to the facts of each particular case; and, as in the determination of any question of fact, much must depend upon the good sense and sound judgment of the trial court. The trial judge had the parties before him and had the benefit of observing their demeanor and of weighing the evidence in the light of his observation of the parties; and if the trial court was of the

opinion that the offense had been committed under all the circumstances, it was its duty to render judgment accordingly. As there was sufficient basis in the evidence to support this conclusion, it is not our province to substitute our judgment on the evidence for that of the trial judge.

In the course of the trial, the plaintiff offered in evidence the record of a justice of the peace court showing a charge against the defendant of lascivious carriage and her plea of guilty. This evidence was admitted over the objection of the defendant. The word "lascivious," as employed in the statute, General Statutes, § 6231, signifies conduct which is wanton, lewd and lustful, and tending to produce voluptuous or lewd emotions. Webster's New International Dictionary (2d Ed.) 1395; *Fowler* v. *State*, 5 Day, 81, 84; *State* v. *Hummer*, 128 Iowa, 505, 104 N.W. 722, 723. The defendant's plea of guilty to this charge was properly admitted in evidence as tending to show inclination. *Wille* v. *Wille*, 88 N.J. Eq. 581, 102 Atl. 74, 77; *Dicus* v. *Dicus*, 131 Md. 87, 101 Atl. 697, 698. The case of *Zenuk* v. *Johnson*, 114 Conn. 383, 388, 158 Atl. 910, much relied upon by the defendant, is not in point. That was an action for negligence, and we held that a plea of guilty entered in behalf of the defendant before the Town Court of Bloomfield upon a charge of unlawfully "violating the rules of the road" was not admissible as an admission of any negligence involved in that action, for the reason that under the statute at least ten specific rules of conduct were prescribed and under the general nature of the information charging simply a violation of the statute, the jury could not determine what particular rule of the road the defendant had plead guilty of violating, and whether any negligence charged in the complaint was involved in such violation.

After the family conference in the hall on the evening of October 3d, 1933, a physician was called to attend Mrs. Zeiner and, being produced as a witness by the plaintiff, was interrogated as to her condition at that time. This line of inquiry was objected to by the defendant upon the ground that statements made by a patient to her physician and knowledge acquired by a physician in the professional examination of a patient are privileged. This objection was overruled by the court and the testimony admitted. In this there was no error. In this State, information acquired by physicians in their professional capacity has never been privileged. *Sherman* v. *Sherman,* 1 Root, 486. It was not so privileged at common law. *Duchess of Kingston's Trial,* 20 How. St. Tr. 355, 573. This rule still prevails where it has not been changed by statute, as it has in many states but not in Connecticut. 70 C. J. 439. The original complaint charged adultery on divers days between September 13th, 1933, and October 3d, 1933. On the trial, the court permitted an amendment, changing the latter date to October 7th, 1933. No prejudice to the defendant's case was shown by this amendment and it was well within the discretion of the trial court.

There is no error upon the defendant's appeal. The plaintiff's appeal is dismissed.

In this opinion the other judges concurred.