## State of Connecticut *v.* Benjamin Reid

BALDWIN, KING, MURPHY, MELLITZ and SHEA, Js.

Argued February 3—decided March 4, 1959

*James D. Cosgrove,* public defender, and *William D. Graham,* special assistant public defender, for the appellant (defendant).

*Douglass B. Wright,* assistant state's attorney, with whom, on the brief, was *Albert S. Bill,* state's attorney, for the appellee (state).

KING, J. The indictment returned by the grand jury charged the defendant with the first degree murder of Florine McCluney "in attempting to perpetrate a robbery." The claims of proof material to the consideration of the defendant's assignments of error will be summarized. Mrs. McCluney was a neighbor who had known the defendant from infancy. She was an especial friend of his mother and had always been friendly with him. She owned a Buick car which she kept in a parking lot near her home in Hartford. At about 4 o'clock in the after-

noon of January 15, 1957, the defendant, who was unemployed, left his house, with a hammer in his belt, to go out on the street. About 9 o'clock in the evening, while in a restaurant, he saw Mrs. Mc-Cluney, who he thought had some money, walking down the street. Thereupon he left the restaurant, crossed the street, cut through an alley and went to the lot where she parked her car. He hid there. When she passed, he felled her with a blow on the head from the hammer. When she moaned, he struck her some more. After breaking a window on the driver's side of her car, he placed her in the car, first removing her fur coat so that he could more easily carry her. Death directly resulted from the blows, which caused a depressed, comminuted fracture of the skull. The body of Mrs. McCluney was found the next morning, frozen solid, in her car. More than $2000 was concealed under her clothing, but the defendant had not found it. At about 11 o'clock the night she was killed, a paper bag with her pocketbook in it was discovered on a sidewalk nearby.

The defendant chose to, and did, take the stand. There was no real dispute as to most of the basic facts, and his version of the crime was virtually the same as that of the state except that he denied that in beating Mrs. McCluney on the head with a hammer, breaking in her skull and causing injuries from which she soon died, he had any idea or intention of killing her. He also denied that he had had any intention of robbing her and claimed to have no explanation of the hammer attack. He claimed, in effect, that he had had too much to drink that afternoon and evening. Although he said that he had put the deceased in her car so that she would not freeze, he had not replaced her coat. His later move-

ments were unimportant except that they showed a consciousness of guilt and a desire to escape arrest, and except that he did nothing to assist the deceased although she was probably not dead when he first put her in her car.

The defendant assigns error in the court's refusal to include in its charge his request to the effect that if he committed the crime of assault with intent to rob,[1] "a homicide arising out of . . . [it] is not murder in the first degree." Section 53-9 of the 1958 Revision provides: "All murder [not all homicide] perpetrated . . . by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, or committed in perpetrating, or in attempting to perpetrate, any . . . robbery . . . shall be murder in the first degree; and all other kinds of murder shall be murder in the second degree; and the degree of the crime charged shall be alleged in the indictment; but the jury before which any person indicted for murder is tried may find him guilty of homicide in a less degree than that charged; . . . ." The history of this statute, which divided murder into two degrees, was summarized in *State* v. *Walters,* 145 Conn. 60, 71, 138 A.2d 786.

Such a charge as was requested would have been not only misleading but prejudicial to the defendant, since it would have tended to absolve the state from the necessity of proving a murder as distinguished from a homicide. *State* v. *Rossi,* 132 Conn. 39, 44, 42 A.2d 354; *State* v. *Tomassi,* 137 Conn. 113, 123, 75 A.2d 67. Were this not a capital case, we would give this assignment of error no further consideration. An inspection of the brief of the de-

---

[1] "[Rev. 1958] Sec. 53-28. ASSAULT WITH INTENT TO ROB. Any person who, with actual violence, makes an assault upon another, with intent to rob him shall be . . . [punished]."

fendant indicates, however, that in the request to charge he was attempting to make the claim that a violation of the assault with intent to rob statute would not constitute either the perpetration or the attempted perpetration of a robbery. To be certain that the defendant is given every consideration, we have decided to consider this claim even though it was not properly raised. The statutory provision as to murder in the first degree applies to a murder committed in perpetrating or in attempting to perpetrate "any" robbery. *State* v. *Rogers,* 143 Conn. 167, 177, 120 A.2d 409. This would include a murder committed in the course of an assault with intent to rob in violation of § 53-28 of the 1958 Revision, for a violation of this statute necessarily involves an attempt to perpetrate a robbery. To bring the murder within the terms of the statute, the state was not required to prove that it was committed in attempting to perpetrate any particular kind of robbery. The only question with which the jury were concerned on this branch of the case was whether it had been proved that the defendant committed a murder in attempting to perpetrate any robbery. Here there was ample evidence from which the jury could find that the killing of the deceased was murder and that it was committed in attempting to perpetrate a robbery upon her. Indeed, the defendant himself gave no other reason for the attack although he did not, on the stand, admit that he was attempting to rob the deceased. The court correctly refused to give the charge requested, and this is so even if we read, in the request, the word "murder" for the word "homicide." This assignment of error is without merit.

The defendant complains of a single ruling on evidence which occurred during his cross-examination.

The assistant state's attorney asked him: "Whether or not this is a correct statement that you gave to Doctor Bancroft . . . ." The defendant's counsel objected that "a doctor examining an accused person is in a confidential relationship, and any statements made to him would be" confidential. Thereupon the assistant state's attorney said that he was cross-examining the defendant on his claim that he did not plan the robbery or the murder. The court overruled the objection and the defendant excepted. In Connecticut there is no privilege between physician and patient. *Zeiner* v. *Zeiner,* 120 Conn. 161, 167, 179 A. 644. An accused, if he chooses to take the stand, subjects himself to cross-examination as to inconsistent statements, as does any other witness. *State* v. *Walters,* 145 Conn. 60, 66, 138 A.2d 786. The objection as made was without merit. In his brief, the defendant now makes an entirely different claim. This claim, however, was not raised or passed upon in the trial court. No error could have been committed by the court as to a claim of this type which it was not asked to rule upon. *Johnson* v. *Rockaway Bus Corporation,* 145 Conn. 204, 210, 140 A.2d 708. But apart from all this, the confessions of the defendant, the voluntary character of which was not questioned, and the other evidence rendered the ruling harmless. It could not have affected the outcome of the trial.

Two other claims of error are made and briefed only by the special assistant public defender. The first assigns error in the denial of the request of the defendant to have counsel appointed for him. The language of this assignment is highly misleading. Actually, the defendant does not claim that he was ever refused or denied the services of counsel, even temporarily; nor in fact was he. See cases such as

*Moore* v. *Michigan,* 355 U.S. 155, 78 S. Ct. 191, 2 L. Ed. 2d 167, and especially the annotation at 2 L. Ed. 2d 1644; also *Crooker* v. *California,* 357 U.S. 433, 78 S. Ct. 1287, 2 L. Ed. 2d 1448. His claim is merely that he was not allowed, at the expense of the state, to be defended by the particular attorneys he desired. On April 1, 1957, he wrote from the jail to the judge of the Superior Court then presiding at the criminal session in Hartford County, stating that he had been informed that in a capital case an accused "may have his choice of lawyers, and does not have to accept the Public Defender" and that he requested the court to appoint a particular attorney to defend him. On April 5, the defendant was brought before the court and the presiding judge asked him about the letter and told him that he was at liberty to employ any lawyer he chose, but that if he lacked the funds necessary to hire private counsel he would have to accept the services of the public defender. Since the defendant replied that he had no funds, the court directed the public defender to continue to represent him. Thereafter, on April 26, long in advance of the trial, an attorney who was a member of the defendant's race was appointed a special assistant public defender to aid in the defense.

The defendant again appeared before the court, then presided over by another judge, on May 17, when the public defender, in the presence of the defendant, asked to be discharged as counsel for the defendant because the latter did not want to be represented by the public defender and was not cooperating in the preparation of a defense. On this occasion, the defendant requested that the state engage for him two particular attorneys, that is, the one he had requested before and another. The court

again explained the situation to the defendant and told him that the state would not, without reason, furnish him with private counsel of his choice. There is no claim that there was any antecedent acquaintance or relationship between the public defender and the defendant, any conflict of interest, or any reason whatsoever why the public defender could not effectively defend the defendant. Quite properly, the defendant has made no attack on the public defender's experience or ability in the defense of persons accused of crime, including the crime of murder in the first degree. Nor has he made any attack on the services rendered by the special assistant public defender.

Connecticut adopted the public defender system in 1917. Public Acts 1917, c. 225. Under this act, the judges of the Superior Court annually appointed a member of the bar who had practiced at least five years to represent persons accused of crime. By chapter 129 of the Public Acts of 1921, the original act was implemented so that it assumed substantially its present form. Rev. 1958, §§ 54-80 and 54-81. Under it an accused who lacks funds is assured of representation by experienced counsel, who, subject to the court's approval, are able to incur whatever expense is necessary for the proper protection of the rights of the accused, not only in the trial court but also on appeal. See *State* v. *Zukauskas*, 132 Conn. 450, 451 n., 45 A.2d 289. When for any reason, such as conflict of interest between two or more accused, there is any real question of the propriety or effectiveness of the public defender's acting for an accused, the act authorizes the court to appoint private counsel to serve as special public defenders, and they are compensated by the state. Indeed, in this very case additional counsel

was employed, although the reason for this does not clearly appear. At no time did the defendant demand the right to defend himself. The claim that without reason an accused can refuse the services of the public defender and compel the state to engage counsel of his own choice is without merit.

The special assistant public defender has extensively briefed a claim that the defendant should have been tendered counsel in the proceedings in the Hartford Police Court immediately after his apprehension. This claim is covered in no assignment of error. We consider it only to make sure that the defendant had a fair trial. In the first place, at no time prior to April, 1957, did the defendant request an attorney. The statute, § 54-80, authorizes the public defender to "act . . . as attorney for the defense of any . . . accused person upon any preliminary hearing before any court in the state or before any committing magistrate." In matters beyond the final jurisdiction of the local court, where the state must make out a case of probable cause for binding over to the Superior Court under the provisions of § 54-15 of the 1958 Revision, the public defender might, at the hearing in the local court, obtain information as to the state's case which would assist in the trial on the merits. But in the present case there was, practically speaking, no preliminary hearing, finding of probable cause or binding over, because the state's attorney filed an original information and a bench warrant was issued on January 17, 1957. Rev. 1958, §§ 54-42, 54-43. Nothing of any consequence occurred at the presentation of the defendant in the Police Court on January 18, 1957. No guilty plea was entered, nor did the defendant make any statements in court. The case was continued. Upon the service of the bench warrant of

the Superior Court, the defendant was removed from the jurisdiction of the Police Court and held under the Superior Court process. Rev. 1958, § 54-43; *State* v. *Hayes,* 127 Conn. 543, 580, 18 A.2d 895. He was confined in jail pending action by the grand jury, which is required in the case of any crime the punishment for which may be either death or life imprisonment. Rev. 1958, § 54-45. The defendant conceded that his claim in his brief that he was not represented by counsel at the time of his presentation before the grand jury on March 7, 1957, was not correct, and he has abandoned that claim. Not only does he fail to show that he was deprived of any rights given him by statute, constitutional provision or otherwise, but the record is replete with evidence that nothing was left undone to give him a good defense.

A further claim, covered by no assignment of error, is that any public defender system, including that of Connecticut, wherein public defenders are appointed by the judiciary, must necessarily result in defenses which are at least potentially ineffective. This result is claimed in some way to flow from the fact that both state's attorneys and public defenders receive their appointments from the same source and that this source is the judiciary. Of course, the main reason for appointment by the judiciary is to insulate these officials from improper pressures or influences from any source, political or otherwise, and to insure that they may fearlessly prosecute or defend, as the case may be, regardless of the public temper of the moment, or the power, influence or connections of the parties involved. The attack on our public defender system is too obviously lacking in merit to warrant discussion. Its best refutation is the work of the public defenders themselves in

the more than forty years in which the system has been in effect in Connecticut.

The final assignment of error is that the court erred in refusing to grant the defendant's motion to set aside the verdict as against the evidence. This assignment is also without merit and requires no discussion.

There is no error.

In this opinion the other judges concurred.