STATE OF CONNECTICUT *v.* JOHN J. HANNA

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued March 7—decided April 25, 1963

*H. Gibson Guion,* public defender, and *John F. Bianchi,* special assistant public defender, for the appellant (defendant).

*Thomas F. Wall,* state's attorney, and *Jonathan F. Ells,* special state's attorney, for the appellee (state).

KING, J. The defendant was indicted, in two counts, on a charge of murder in the first degree in the killing of Francis Gavell, manager of the First National store in New Milford, on November 18, 1959. The first count charged wilful, deliberate and premeditated murder, and the second count charged murder in the perpetration of a robbery. On May 24, 1960, after a trial to the jury, the defendant was found guilty on both counts, the jury made a recommendation for clemency under General Statutes § 53-10, and on the same day the mandatory sentence of imprisonment for life was imposed. *State* v. *Walters,* 145 Conn. 60, 72, 138 A.2d 786, appeal dismissed and cert. denied, 358 U.S. 46, 79 S. Ct. 70, 3 L. Ed. 2d 45.

The appeal is divided into two parts. The first part involves claims of error in the course of the trial. The second part seeks to raise the claim that certain bloodstained garments were inadmissible because they were the fruits of an illegal search and seizure.

## I

### A

Dr. Howard G. Stevens, the medical examiner, testified that in his opinion the cause of the death "must have been a very, very severe hit by a heavy blunt instrument." He was then asked whether he had an opinion as to the agency causing the blow by the blunt instrument, and he answered that he had. Over the objection of the defendant, he was asked what that opinion was and stated that it

"must have been a very powerful blow by some other person with a blunt instrument." The defendant objected on the ground that the witness was not qualified to state more than whether or not the blow was self-inflicted. Obviously, the blow must have been self-inflicted, inflicted by another, or the result of an accident. No request was made for a preliminary or interlocutory cross-examination on the doctor's special qualifications to give an opinion. There is nothing to indicate that the wounds were of such a character that any layman could conclude that they were inflicted by a human agency, so as to obviate the necessity of expert testimony under the dictum in *State* v. *Lee,* 65 Conn. 265, 280, 30 A. 1110, a case on which the defendant seems to rely. The court, on the foundation as laid, was at least justified in concluding that the witness was competent and qualified to express an opinion that the blows were inflicted by another human being. *Taylor* v. *Monroe,* 43 Conn. 36, 44; *State* v. *Nelson,* 139 Conn. 124, 128, 90 A.2d 157. The defendant has shown no error in the ruling.

### B

The defendant objected to the admission in evidence of certain colored slides taken of the body of the decedent during the autopsy. These were used by Dr. Richard Ford, an expert called by the state, in his testimony on the cause and manner of death. The finding does not indicate that the defendant stated any ground of objection or that the state urged any ground for the admission of the evidence. Under these circumstances, there was no error in the court's ruling admitting the slides. Practice Book § 155; *Casalo* v. *Claro,* 147 Conn. 625, 627, 165 A.2d 153.

In his brief, the defendant claims that the slides were inadmissible because (1) they were gruesome and would unduly inflame the jury, and (2) they were not necessary to the state's case since the state had already laid in evidence black and white photographs taken at about the same time. As this is a capital case, we have decided to consider these claims. The court examined the slides in the absence of the jury and admitted only six. As is indicated by the objection to the medical examiner's testimony, the defendant in nowise conceded that the death was a homicide. Thus, the state was obliged to put in such proper evidence as it had, to prove that the death was neither a suicide nor the result of an accident. That the photographs were colored instead of black and white was, in and of itself, no ground for their exclusion. Note, 53 A.L.R.2d 1102. Its only significance would be its possible effect with respect to gruesomeness. Id., p. 1103. The slides depicted facts which were certainly relevant, and may well have been material, to the state's case, and we cannot say that they were so gruesome as to overbalance their testimonial value. *State* v. *Culombe,* 147 Conn. 194, 215, 158 A.2d 239, rev'd on other grounds, 367 U.S. 568, 81 S. Ct. 1860, 6 L. Ed. 2d 1037. In general, photographs of a corpse have been held properly admissible in prosecutions for homicide as against objections on the ground of prejudicial gruesomeness; note, 73 A.L.R.2d 769, 787; or on the ground that they constituted merely cumulative evidence. Id., p. 807. In *State* v. *Bailey,* 79 Conn. 589, 602, 65 A. 951, also a bludgeoning case, the deceased's skull itself was admitted in evidence as well as photographs of his head showing the injuries. There was no error in the admission of the colored slides.

## C

The state offered in evidence, as exhibits, certain audit records purporting to show the funds stolen from the First National store on the night of November 18, 1959. The records were objected to because of certain conflicting dates on the cash register tapes and the checkers' balance sheets; the defendant claimed that these conflicting dates impaired the accuracy of the audit. The state was required to prove a robbery if it was to secure a conviction under the second count, but it was not required to prove that any particular sum of money was stolen. See *State* v. *Reid,* 146 Conn. 227, 231, 149 A.2d 698. The probative value of evidence as to even the approximate amount taken was largely, if not entirely, in that this figure roughly corresponded to the amount of money testified to have been in the defendant's possession that same evening. The court was not in error in finding the foundation adequate for the admission of the exhibits in evidence. Their weight, of course, was for the jury. See cases such as *Engelke* v. *Wheatley,* 148 Conn. 398, 410, 171 A.2d 402.

## D

Error is assigned in certain rulings admitting evidence concerning a laboratory test of the blood type of the defendant. The objection was on the ground that the information sought was a privileged communication between an attorney and his client. A ruling on evidence is to be tested by the finding. *Facey* v. *Merkle,* 146 Conn. 129, 131, 148 A.2d 261. On the basis of the finding, the defendant failed to show that any of the rulings were erroneous.

In connection with these rulings, we have decided to consider certain excerpts from the evidence which

the defendant caused to be printed in an appendix to his brief. The state, in an appendix to its brief, followed the same erroneous course in presenting an evidential ruling. Excerpts of evidence pertinent to such rulings, should be summarized, or, if necessary, quoted, in the finding. Practice Book § 405; Maltbie, Conn. App. Proc. § 147. The reason for this rule is obvious in this case. The question of privilege was for the court to determine on the foundation as laid. 8 Wigmore, Evidence § 2322, p. 630 (McNaughton Rev. 1961). When the court itself sets forth the factual setting in the portion of the finding concerned with a given evidential ruling of this type, we know what part of the foundation evidence the court credited and, so, the factual basis on which the ruling was made.

The state had offered evidence to prove that the decedent's blood had been typed and found to be type O and that bloodstains on a pair of trousers and a brown topcoat which the state claimed the defendant had worn on the day of the murder had also been typed and found to be type O human blood. The state then called Dr. Charles N. Warner, a jail physician, and asked him whether he had been requested by the public defender to do anything in connection with the defendant. An objection by the defendant on the ground that anything which Dr. Warner had done in connection with the defendant was in effect a privileged communication was overruled. The witness answered that he had taken a sample of the defendant's blood to have it typed. The fact that a blood analysis had been made was not, even though the analysis was at the request of the defendant's counsel, privileged on its face, although the result of the analysis might have been shown to be privileged. See *Colton* v. *United States,*

306 F.2d 633, 637 (2d Cir.), cert. denied, 371 U.S. 951, 83 S. Ct. 505, 9 L. Ed. 2d 499; *Turner's Appeal,* 72 Conn. 305, 318, 44 A. 310; 8 Wigmore, op. cit. § 2309, p. 596; McCormick, Evidence §§ 93, 94. The testimony which was admitted appears to have been an essential part of any foundation for a possible claim of privilege between attorney and client. *Colton* v. *United States,* supra, 638. Except for one statutory exception irrelevant to this case, there is no privilege in Connecticut between physician and patient. *Zeiner* v. *Zeiner,* 120 Conn. 161, 167, 179 A. 644. There was no error in the admission of this testimony.

In the other rulings complained of, Phyllis Tyrrell, a laboratory technician at the Charlotte Hungerford Hospital, in Torrington, was allowed to testify that she had received a sample of blood from Dr. Warner marked with the defendant's name, that she had typed it, and that it was type A. We have decided to overlook procedural shortcomings and to consider that a proper objection to the admission of this evidence was made in a timely manner. The evidence elicited from Mrs. Tyrrell, apart from the result of the test—that is, the defendant's blood type—does not appear to have been privileged. The same may be said of the hospital record, which was admitted over objection. See cases such as *Colton* v. *United States,* supra, 637.

It remains to consider the portions of Mrs. Tyrrell's testimony and of the hospital record which gave the result of the analysis of the defendant's blood as type A. Some further facts are now required. The state, as indicated above, had come into possession of some clothing of the defendant which was bloodstained. The state claimed that the stains were caused by the decedent's blood. The

defendant, however, claimed that the blood had come from an injury sustained by him and therefore was his own blood. In some manner, the defendant and his attorney found out that the state had determined that the blood of the decedent and the blood on the defendant's clothing were both type O. The defendant's blood had been typed in the past and had been recorded as type O. Thus, both the defendant and his counsel were confident that the defendant's blood was the same type as that of the decedent. With that in mind, the defendant's counsel applied to the court for funds to have the defendant's blood typed. These funds were allowed by the court. Thereupon, the public defender arranged to have Dr. Warner take a specimen of the defendant's blood at the jail and have it typed. Dr. Warner, after obtaining the specimen, took it to the hospital, where it was subjected to laboratory analysis and found to be type A. That fact, as well as that the specimen was the defendant's blood, was so entered in the laboratory records of the hospital.

On the one hand, the privilege of attorney and client must be protected, and, on the other hand, a privilege between physician and patient must not be created, since such a privilege does not exist under our law. *United States* v. *Kovel,* 296 F.2d 918, 921 (2d Cir.). There was no attempt to compel disclosure by either the attorney or the client. It is true, of course, that the privilege accorded communications between attorney and client is not limited to direct communications between the two. It extends to communications made through agents for communication. *Goddard* v. *Gardner,* 28 Conn. 172, 175; *United States* v. *Kovel,* supra; see note, 139 A.L.R. 1250, 1256; 8 Wigmore, op. cit. § 2317, p. 618. But such communications are privileged to

no greater extent than they would have been had they been made directly between the principals. Cf. 8 Wigmore, op. cit. § 2307, pp. 591-593. Since the privilege exists only to secure the client's subjective freedom of consultation, it goes no further than is necessary to insure that result. 8 Wigmore, op. cit. § 2311, p. 603. For reasons hereinafter discussed, we may assume, without so deciding, that on the facts the witnesses to the result of the blood test were, as claimed by the defendant, under the same prohibition against disclosure as the attorney would have been had he been a witness.

One of the essential elements of the claim of privilege between attorney and client is that the communication be confidential. *Turner's Appeal,* 72 Conn. 305, 318, 44 A. 310; *Doyle* v. *Reeves,* 112 Conn. 521, 523, 152 A. 882, quoting 5 Wigmore, Evidence (2d Ed.) § 2292 (almost identical in language with 8 Wigmore, Evidence § 2292, p. 554 [McNaughton Rev. 1961]); McCormick, Evidence § 95. The burden of proving the facts essential to the privilege is on the person asserting it. *United States* v. *Kovel,* supra, 923; *McWilliams* v. *American Fidelity Co.,* 140 Conn. 572, 581, 102 A.2d 345; *Turner's Appeal,* supra, 317; *Robertson* v. *Commonwealth,* 181 Va. 520, 540, 25 S.E.2d 352. This burden includes, of course, the burden of proving the essential element that the communication was confidential. 8 Wigmore, Evidence § 2311, pp. 599, 600 (McNaughton Rev. 1961). Here, the communication sought to be protected—that is, the defendant's blood type—was known to the laboratory technician and the hospital. As to neither, as such, was there any privilege of nondisclosure. *Zeiner* v. *Zeiner,* 120 Conn. 161, 167, 179 A. 644. There is nothing in the entire printed record indicating that the tak-

ing of the blood test or its result was subjectively intended by the defendant to be confidential. The whole proceeding was entirely different from a direct communication from a client to his attorney either made in or sent to the attorney's office; in such a case, relatively little factual foundation would ordinarily be required to establish the privilege and, so, the inadmissibility of any question concerning the subject matter of the communication. *McWilliams* v. *American Fidelity Co.,* supra. At the time the defendant's blood specimen was taken, both the defendant and his attorney were practically certain that the test would reveal that the blood type of the decedent and the blood type of the defendant were the same. Under the circumstances, there was nothing to fear and no occasion for confidential treatment. Only after it was learned that the result of the test was not as expected and was adverse to the defendant's case did there arise concern about keeping that result from the jury.

No foundation was laid to show that the communications had an objectively confidential character. There is nothing to indicate the circumstances under which the blood specimen was taken except that it was taken in the jail. The doctor took the specimen to the hospital, as he would any other specimen, where a routine record was made—including the defendant's name—at the admissions desk. Immediately thereafter, Dr. Warner took the specimen, with the accompanying record, to the hospital laboratory, where both were handed over to the laboratory technician, and the defendant's name was verbally stated to her, all in the presence and hearing of a Mr. Siebek. Who Siebek was and why he was in the laboratory are wholly unexplained. There is nothing here to indicate any confidentiality

regarding the specimen or the test. No evidence was elicited to show that there was any necessity for this method of procedure or that the test could not have been made in some confidential manner, if indeed any confidential communication was intended. No foundation was laid to show that, either subjectively or objectively, the blood typing was treated as confidential by the defendant, Dr. Warner, the laboratory technician, the hospital, or anyone else. Thus, there was a failure to establish the facts essential to bring the result of the blood typing under the rule of privilege. This failure is fatal to the privilege. *Goddard* v. *Gardner,* 28 Conn. 172, 175; *Pulford's Appeal,* 48 Conn. 247, 249; *Turner's Appeal,* 72 Conn. 305, 317, 44 A. 310; *McWilliams* v. *American Fidelity Co.,* 140 Conn. 572, 581, 102 A.2d 345.

There was no error in the court's ruling admitting the evidence as to the taking of the blood test and its results.

### E

The other assignments of error are not of sufficient consequence to require discussion. In none, under the facts in the finding, can we find harmful error. Thus, in the first part of the appeal there was no harmful error.

### II

The defendant maintains that the bloodstained clothing previously referred to was inadmissible because it was obtained by an unreasonable search and seizure. This claim was not made at the trial but was subsequently inspired by the decision of the United States Supreme Court in *Mapp* v. *Ohio,* 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, decided June 19, 1961, over a year after completion

of the trial in the present case but during the pendency of this appeal. See also our cases of *State* v. *DelVecchio,* 149 Conn. 567, 573, 182 A.2d 402, and *State* v. *Fahy,* 149 Conn. 577, 582, 183 A.2d 256, cert. granted, 372 U.S. 928, 83 S. Ct. 871, 9 L. Ed. 2d 732.

The question of the admissibility of evidence obtained by a search and seizure is a matter for the court to decide. *Pickett* v. *Marcucci's Liquors,* 112 Conn. 169, 173, 151 A. 526; *State* v. *Griswold,* 67 Conn. 290, 304, 34 A. 1046; *Robinson* v. *Ferry,* 11 Conn. 460, 463; note, 50 A.L.R.2d 531, 589; see *State* v. *Traub,* 150 Conn. 169, 171, 187 A.2d 230. At the trial, the court was not asked to, nor did it, address itself to the issue of the legality of the search and seizure, since the matter was then considered irrelevant, and the clothing came in without objection on any such ground. Ordinarily, when a question is not raised at trial it will not be considered on appeal. Practice Book § 409; Maltbie, Conn. App. Proc. §§ 305, 308. This court, however, during the pendency of the appeal, entered an order, at the defendant's request, that the trial court file a supplemental finding with respect to the manner in which the state obtained the clothing and its admission in evidence. Such a finding was filed, and we have decided to consider the claims made by the defendant on the basis of that finding. See *State* v. *Fahy,* supra, 585; *People* v. *Friola,* 11 N.Y.2d 157, 159, 182 N.E.2d 100.

Since the decision in *Mapp* v. *Ohio,* supra, evidence obtained by an unreasonable search and seizure is inadmissible. *State* v. *Fahy,* supra, 586; *State* v. *DelVecchio,* supra; U.S. Const. amend. IV, XIV, § 1; Conn. Const. art. 1 § 8. But if one consents to a search of his person, possessions, or living quarters, he waives his constitutional protection

and the evidence so obtained is admissible. *State v. Griswold,* supra; 4 Wharton, Criminal Law & Procedure § 1578. Although it is presumed, until the contrary is indicated, that a police officer has acted lawfully; *State v. Reynolds,* 101 Conn. 224, 231, 125 A. 636; this does not raise a concomitant presumption of consent to a search and seizure. When consent is claimed by the state to have rendered lawful an otherwise illegal search and seizure, the burden is on the state affirmatively to establish the consent. *Villano v. United States,* 310 F.2d 680, 684 (10th Cir.); *United States v. Smith,* 308 F.2d 657, 663 (2d Cir.).

The state offered evidence to prove facts which can be summarized as follows: Two days after the date of the commission of the crime, the defendant was interrogated by New York police officers at the 114th precinct in Astoria. One of the officers asked the defendant if he would mind accompanying him to Queens to look at the apartment where the defendant was staying. The defendant said, "Not at all. I will go right back with you." The defendant voluntarily accompanied the officers—two New York and two Connecticut policemen—and showed them the route to and the location of the apartment. The policemen entered the apartment with the full consent of the defendant and Miss Jean Milano, who also occupied it. Refreshments were provided for the officers by the defendant, in the apartment. The defendant voluntarily directed them to a clothes closet, where a topcoat and a pair of trousers, both bloodstained, were found by one of the Connecticut policemen. The defendant at that time identified the clothes as those which he wore on the day the crime was committed. At no time did the defendant object to being questioned by the

police, to being accompanied to the apartment by the police, or to the taking of his clothing by the police.

The court found that the police used no force and that the defendant cooperated with the police, directed the route to his apartment, pointed out the closet where his clothing was and made no objection to the examination of the bloodstained clothing or the taking and retention of it by the police. There was nothing to suggest any violence, threats of violence, intimidation or overawing of the defendant by the police. Indeed, the claims of proof of the defendant which bear on this question of consent were consistent with those of the state. Although the trial court, in its supplemental finding, did not in express words find consent, the subordinate facts found by it are tantamount to a finding of consent and must be so treated. *United States* v. *Sferas,* 210 F.2d 69, 74 (7th Cir.), cert. denied, 347 U.S. 935, 74 S. Ct. 630, 98 L. Ed. 1086. Under some circumstances, compliance with a request of the police for permission to enter and search premises, or even an invitation to enter and search following such a request, should not be considered as a waiver of the constitutional guarantee against an unreasonable—this is, illegal—search and seizure. *Johnson* v. *United States,* 333 U.S. 10, 13, 68 S. Ct. 367, 92 L. Ed. 436; *Amos* v. *United States,* 255 U.S. 313, 317, 41 S. Ct. 266, 65 L. Ed. 654; *Catalanotte* v. *United States,* 208 F.2d 264, 268 (6th Cir.). It might be that consent to a search, even if executed in writing, witnessed and notarized, would not be a truly voluntary act. And unless consent is voluntary, it cannot be found. Cf. *Higgins* v. *United States,* 209 F.2d 819, 820 (D.C. Cir.). The question of consent to an otherwise technically illegal search

is one of fact, to be decided by the trial court upon the evidence together with the reasonable inferences to be drawn from it. Only if consent is affirmatively established should it be found. Here, where there were no threats or violence, the question is really whether the admission of the police to the apartment, at their request, and the giving to them of permission to search it, or some part of it, were in fact the truly voluntary actions of the defendant or were a yielding to supposed authority. The defendant, who had had previous experience with police, criminal procedure and penal institutions, aided the police, cooperated with them, accompanied them into his apartment and treated them as his guests. He displayed the self-assurance of a man confident that such a course would dispel their suspicions and thereby best subserve his interests. The defendant is a man of at least ordinary intelligence. His general level of intelligence is not questioned. He speaks English fluently. Clearly, his conduct was not that of a man who, from lack of education, from ignorance or from fear, submitted to implied or actual coercion of either apparent or asserted authority. *United States* v. *Dornblut,* 261 F.2d 949, 950 (2d Cir.), cert. denied, 360 U.S. 912, 79 S. Ct. 1298, 3 L. Ed. 2d 1262; *United States* v. *MacLeod,* 207 F.2d 853, 856 (7th Cir.).

In this case, the conclusion of consent which was in effect drawn by the court in its supplemental finding was not only a reasonable one but the only conclusion which it reasonably could reach. The defendant has shown no error in the admission in evidence of the bloodstained clothing.

There is no error.

In this opinion the other judges concurred.