[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The movant, the Department of Transportation of the State of Connecticut, filed a motion to intervene in this matter in order to address the limited issues raised by its objection to the defendant's motion to compel. Before this motion could be decided, this court ruled on the motion to compel. The movant then renewed its motion to intervene and filed a motion to reargue. The court grants the motions to intervene and reargue and turns to the merits of the issues in dispute. The pertinent facts are as follows.
FACTS
On April 29, 1999, the defendant, Semac Electrical Contractors (hereinafter, "Semac"), moved to compel Pasquale CT Page 10885 Trotta, a third-party witness in the present matter, to appear at a deposition and to produce written documents in his possession relating to a claim which Semac filed with the State of Connecticut, Department of Transportation (hereinafter "DOT") pursuant to General Statutes § 4-61. Semac is seeking to depose Trotta and to obtain the disclosure of "all reports, records, notes, or any other written document or electronically recorded medium concerning or contained in the file maintained in connection with Connecticut Department of Transportation Project No. 173-245." (Subpoena Duces Tecum, 4/19/99.) Trotta is an accountant with Seward and Monde, an accounting firm with whom DOT contracted to conduct an audit of Semac's claim for delays and damages.
On May 14, 1999, Trotta filed an objection to the motion to compel, in which he claimed that the documents sought are the property of the state and are protected from disclosure by the attorney-client privilege and the work product doctrine. The court, Robinson, J., granted Semac's motion to compel on June 1, 1999. Pursuant to P.B. § 11-12, DOT requested reargument. DOT seeks reargument on the same grounds as those outlined above, which are discussed more fully in DOT's memorandum of law in support of the motion to intervene, dated May 13, 1999.
On May 13, 1999, DOT filed a motion to intervene for the limited purposes of asserting the attorney-client privilege and the work product doctrine. In its supporting memorandum of law, DOT argues that the materials sought are privileged "as these materials were produced in anticipation of and in preparation for litigation and are properties of the DOT." (DOT Mem. of Law, 5/13/99, pp. 1-2.) DOT claims that "the Office of the Attorney General requested that the DOT arrange for an audit on Semac's damages claim for the project" (DOT Mem. of Law, 5/13/99, p. 3.) and that Seward and Monde's role "was to gather and codify documents and information relating to the Project from which the Attorney General's Office could render legal advice." (DOT Mem. of Law, 5/13/99, p. 4.) DOT further argues pursuant to Practice Book § 13-3 that Semac has failed to demonstrate "a substantial need for the requested documents nor has it shown that it is unable without undue hardship to obtain the substantial equivalent of the materials by other means; after all, Richards was Semac's subcontractor on the Project." (DOT Mem. of Law, 5/13/99, pp. 4-5.)
In its memorandum of law in opposition, Semac argues that the CT Page 10886 materials sought are neither covered by the attorney-client privilege nor are they work-product. Rather, Semac argues, they "are work papers and correspondence prepared by an accounting firm in connection with an audit of Semac's . . . claim to the State of Connecticut Department of Transportation for extra compensation." (Def. Mot. to Compel, 4/28/99, p. 2.) Semac further argues that neither Trotta nor DOT has demonstrated that Trotta's communications to any attorney were intended to be confidential. Additionally, Semac contends that "the presence of third parties would vitiate any privilege," and that the materials sought are not the product of any attorney nor do they involve duties normally performed by attorneys. Therefore, the defendant concludes, the work-product rule is not applicable. (Def. Mot. to Compel, 4/28/99, p. 2.)
ISSUES PRESENTED
The issue presently before the court is whether the attorney-client privilege and the work product doctrine protect from discovery the documents requested by Semac. More specifically, the parties request this court decide whether the materials sought by the defendant are protected by the attorney-client privilege of the State of Connecticut, Department of Transportation; whether the materials sought by the defendant are the work product of the State of Connecticut Department of Transportation; and whether the defendant has made the necessary showing of substantial need and undue hardship in order to obtain documents that are protected from discovery by the work product rule.
DISCUSSION
Semac seeks to discover "all reports, records, notes, or any other written document or electronically recorded medium concerning or contained in the file maintained in connection with Connecticut Department of Transportation Project No. 173-245." (Subpoena Duces Tecum, 4/19/99.) At short calendar, July 6, 1999, Semac's counsel clarified that he was seeking discovery of documents relating to the financial records of the plaintiff, Richards Corporation (Richards), which are in Trotta's possession. Semac's counsel further argued that he has attempted to obtain the information directly from Richards to no avail because Richards' financial records are in disarray. Therefore, the financial information allegedly is not readily available. In response, DOT argued that the materials are the property of DOT CT Page 10887 and are protected from disclosure by the attorney-client and work product doctrines. Any disclosures of the requested materials, DOT's counsel argued, would jeopardize present and future investigations of similar claims.
The granting or denial of a discovery request rests in the sound discretion of the court. Standard Tallow Corp. v. Jowdy,190 Conn. 48, 57-58, 459 A.2d 503 (1983). Practice Book § 13-2
provides in relevant part: "[i]n any civil action . . . where the judicial authority finds it reasonably probable that evidence outside the record will be required, a party may obtain . . . discovery of information or disclosure, production and inspection of papers, books or documents material to the subject matter involved in the pending case, which are not privileged. . . ." "The attorney-client privilege protects communications between client and attorney when made in confidence for the purpose of seeking or giving legal advice." Ullmann v. State, 230 Conn. 698,711, 647 A.2d 324 (1994). "[W]here legal advice of any kind is sought from a professional legal advisor in his [or her] capacity as such, the communications relating to that purpose, made in confidence by the client, are at [the client's] instance permanently protected from disclosure by [the client] or by the legal advisor, except the protection may be waived. [Rienzo v.Santangelo, 160 Conn. 391, 395, 279 A.2d 565 (1971);] LaFaive v.DiLoreto, 2 Conn. App. 58, 65, 476 A.2d 626, cert. denied,194 Conn. 801, 477 A.2d 1021 (1984). The privilege exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him [or her] to give sound and informed advice. Upjohn Co. v.United States, [449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584
(1981)]. [The Court notes], however, that since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose. Accordingly, it protects only those disclosures-necessary to obtain informed legal advice-which might not have been made absent the privilege. . . . Fisher v. UnitedStates, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39
(1976). Ullmann v. State, 230 Conn. 698, 713, 647 A.2d 324
(1994)." (Internal quotation marks omitted.) Shew v. Freedom ofInformation Commission, 245 Conn. 149, 158-59, 714 A.2d 644
(1998). Nevertheless, the privilege is not limited to direct communications between client and attorney. "It extends to communications made through agents for communication. . . . But such communications are privileged to no greater extent than they CT Page 10888 would have been had they been made directly between the principals." (Citations omitted.) State v. Hanna, 150 Conn. 457,465-66, 191 A.2d 124 (1963). Furthermore, the burden of proving facts essential to the privilege rests with the party asserting it. State v. Hanna, supra, 150 Conn. 466.
Thus, to successfully assert that the privilege attaches to the requested documents, DOT must prove that the documents are confidential communications between DOT or its agent and the Attorney General's office, which were made for the purpose of seeking or rendering legal advice. According to the affidavit of Jo Ann Devine, a DOT employee responsible for handling construction claims brought against the department, "[t]he Attorney General's Office frequently requests its client agencies to perform audits of construction claims to help it prepare the client agency's defense of such claims." (Devine Affid., ¶ 6.) Devine attests: "In anticipation of and in preparation for litigation, the Office of the Attorney General requested that DOT arrange for an audit on Semac's damages claim for the Project." (Devine Affid., ¶ 7.) She further attests that "[p]ursuant to . . . the on-call agreement . . . [and] the Request for Proposal ("RFP") from DOT to Seward and Monde to perform the audit on Semac's claim for damages, the audit work papers are the property of the DOT." (Devine Affid., ¶ 8.) Nowhere in the affidavit does Devine attest to the nature of the allegedly protected communications which may or may not be contained in the sought documents. Rather, DOT offers blanket statements that the documents are DOT's property and are privileged because they were executed at the request of the Attorney General's office. These statements standing alone are not enough to prove that the requested documents are or contain privileged communications. SeeUnited States v. Arthur Young Co., 465 U.S. 805, 817,104 S.Ct. 1495, 79 L.Ed.2d 826 (1984) (no confidential accountant-client privilege exists under federal law"). Binkowskiv. Danbury Hospital, Superior Court, judicial district of Ansonia Milford at Milford, Docket No. 055127 (June 10, 1997, Corradino, J.) (19 Conn. L. Rptr. 603) ("After all, the mere fact that a party has an internal report prepared because it anticipates future litigation does not clothe the report with the attorney-client privilege."). The DOT, as the party asserting the attorney-client privilege, has not met its burden in establishing attorney-client privilege.
Subsequent to the filing of the briefs regarding this matter and after arguments were heard, the Assistant Attorney General CT Page 10889 submitted to this court a copy of Public Act 99-179, "An Act Concerning the Government Attorney Client Privilege." Presumably, a copy of this act was provided because of its potential relevance to the matter at hand. After a careful review of the language of the act, itself, and the legislative history, this court finds that the passage of this new law, does not change its decision regarding this issue of attorney-client privilege.
Public Act 99-179 was passed in response to Shew v. Freedomof Information Commission, 245 Conn. 149, 714 A.2d 664 (1998). InShew, the court ruled "the attorney-client privilege protects communications in circumstances where the client is a corporate or municipal entity";[1] id., 158; but did not specifically address the issue in the context of an attorney employed by a state agency. Public Act 99-179 was drafted, apparently, to clarify this matter. See 42 H.R. Proc., 1999 Sess., pp. 3609-10 (in which Representative Paul Doyle, the only person to speak onP.A. 99-179 in either house, stated that the act "just clarifies that there is a statutory attorney-client privilege between a state official and an [attorney] [sic]" because Shew did not clarify "whether or not state officials and their attorneys have an attorney-client privilege.").
Public Act 99-179, adopting the criteria set forth in Shrew, provides in relevant part: "In any civil . . . case, all confidential communications shall be privileged and a government attorney shall not disclose any such communications unless an authorized representative of the public agency consents to waive the privilege and allow such disclosure." Public Acts 1999, No. 99-179, § (1)(b). Under P.A. 99-179, "confidential communications" include "oral and written communications transmitted in confidence between a public official or employee of a public agency and a government attorney relating to legal advice sought by the public agency . . . and all records prepared by the government attorney in furtherance of the rendition of such legal advice." P.A. No. 99-179 § (1)(a)(2). "Government attorney" is defined as a person admitted to the Connecticut Bar who is employed or retained by a public official or public agency to provide legal advice to such official or agency, while "public agency" is defined in accordance with General Statutes § 1-200(1) (a)(1). P.A. 99-179, § (1)(a)(3) and (4); see also General Statutes § 1-200(1) (public agency includes any state or municipal administrative office or department).
Public Act provides that confidential communications between CT Page 10890 public agencies, whether state or municipal, and their attorneys relating to legal advice protected from disclosure under the attorney-client privilege rule. The act, this court holds, is not relevant to this case.
Whereas the attorney-client privilege is an evidentiary rule, the work product doctrine is a rule of discovery. C. Tait, Handbook of Connecticut Evidence (2nd Ed. 1988) § 12.5.11, p. 450. "The work product rule protects an attorney's interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible items. . . . Work product can be defined as the result of an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation." (Citations omitted; internal quotation marks omitted.) Ullmann v.State, supra, 230 Conn. 714. "To be protected under this doctrine, the work of the attorney must be such that it forms an essential step in the procurement of data and must involve duties normally performed by attorneys." Barksdale v. Harris,30 Conn. App. 754, 761, 622 A.2d 597, cert. denied, 225 Conn. 927,625 A.2d 825 (1993). Codified in Practice Book § 13-3, the work product doctrine provides absolute protection from disclosure "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." P.B. § 13-3(a). The rule allows "a party [to] obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative[2] only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Id. Further, "[t]he burden of establishing that the information sought constitutes work product is upon the party asserting such a claim." Cribs v. PeerlessInsurance Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 402299 (January 21, 1998, Levin, J.).
In its memorandum of law, Semac argues that "[t]he documents sought are not the product of any attorney nor involve duties normally performed by attorneys." (Def. Mot. to Compel, 4/28/99, p. 2.)
Thus, in order to successfully assert that the requested documents come under the work product doctrine, DOT must first establish that the documents were produced by or for an attorney CT Page 10891 in anticipation of litigation. Once the materials are established as work product, Semac must demonstrate that it has a substantial need for the materials and that it cannot obtain the materials through other means without undue hardship. Non-work product documents may be disclosed without such a showing pursuant to Practice Book § 13-3(b).[3] Regardless of Semac's need, however, mental impressions and legal strategies are not discoverable under § 13-3(a). In its memorandum of law, DOT argues that "the role of Seward and Monte was to gather and codify documents and information relating to the Project from which the Attorney General's Office could render legal advice; that was accomplished." (DOT Mem. of Law, 5/13/99. p. 4.) Devine in her affidavit attests that "[i]n anticipation and in preparation for litigation, the Office of the Attorney General requested that DOT arrange an audit on Semac's damages claim for the Project." (Devine Affid., ¶ 8.) She further attests that "[a]t the request and recommendation of the Office of the Attorney General, DOT requested that Seward and Monde, an outside, on-call consultant perform the audit of Semac's damages claim. (Devine Affid., ¶ 9.) Attached to the affidavit is a copy of the memo between Kenneth Fargnoli of DOT and William Scholl, director of external audits at the Connecticut Bureau of Finance and Administration, dated August 1, 1994, in which Fargnoli states that Larry Ross, assistant attorney general, requested that an audit be performed on the Semac claim and that Seward and Monde be assigned as auditor "due to their familiarity with the claims consultant that prepared this claim." Absent is a documents list from DOT or Trotta listing the documents in the possession of Trotta.
In Cribs v. Peerless Insurance Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 402299 (January 21, 1998, Levin, J.), the court tracked the language of Practice Book § 129 and 126 (now 13-3 and 13-1[4]) and held that "documents sought to be protected need not have been created by or at the direction of a party's attorney. Instead, they may be created or prepared by or for another party or by or for that other party's representative . . . (Internal quotation marks omitted.) But see Jacobs v. Dickey, Superior Court, judicial district of New Haven at New Haven, Docket No. 359518 (February 5, 1998, Silbert, J.) (21 Conn. L. Rptr. 1627) (granting motion to compel, in part, on ground that although documents in question suggested that defendant was preparing narrative of events for eventual submission to attorney, they were not prepared at direction of attorney and therefore not work product.) CT Page 10892
In the present case, the documents were prepared at the direction of an attorney, as evidenced by the affidavit of Jo Ann Devine. Further, the documents were produced during an investigation of a construction claim pursuant to General Statutes § 4-61. Under § 4-61a contractor on a state construction project may bring in the Superior Court of Hartford a claim for delays and damage. This right is conditioned upon the giving of "notice of each such claim under such contract and the factual bases for each such claim shall have been given in writing to the agency head of the department administering the contract. . . ." General Statutes § 4-61(a). According to Devine's affidavit, DOT received such notice from Semac, at which time DOT notified the Attorney General's office. Devine attests that upon instruction of counsel DOT then sought out Seward and Monde to investigate the claim. Investigating claims is well within those activities and duties normally performed by attorneys, especially under the present circumstances whereby notice of claim was given pursuant to a statute which expressly authorizes a cause of action. Practice Book § 13-3 treats documents produced at the direction of a party or a party's representative in anticipation of litigation as work product. For the above reasons, it appears that some of the documents requested by Semac may be work product and, therefore, nondiscoverable by Semac without a showing of substantial need and undue hardship. Absent a list describing the requested documents in Trotta's possession, however, the court will not be able to reach a definite conclusion as to all of the documents which are protected under the work product rule and are, therefore, not discoverable.
In conclusion, this court holds that the materials sought by the defendant do not come within the attorney-client privilege, but may constitute work product. Although the requested documents which relate to the plaintiffs financial records are work product, the defendant has met his burden of proving need and undue hardship to overcome the work product privilege. The plaintiff is entitled to obtain these documents. Finally, this court will not be able to determine which additional documents sought by the defendant are discoverable in the absence of a documents list describing the documents that are in the possession of the prospective deponent. Therefore, the court affirms its earlier ruling and grants the defendant's motion to compel the deposition of Trotta. Further, the deponent is ordered to produce documents relating to the financial records of the plaintiff. The other records to which the movant objects to producing are to be submitted to the court for in camera CT Page 10893 inspection.
Angela Carol Robinson, Judge, Superior Court