## The Stanley Works *v.* New Britain Redevelopment Agency

King, C. J., Alcorn, House, Thim and Ryan, Js.

---

Argued February 14—decided May 10, 1967

*Arthur S. Sachs,* with whom were *Sonja Goldstein* and, on the brief, *John A. Oliva,* for the appellant-appellee (defendant).

*Richard G. Bell,* with whom were *James W. Cooper* and *William K. Muir, Jr.,* for the appellee-appellant (plaintiff).

THIM, J.  On or about November 25, 1964, the defendant, acting under § 8-129 of the General Statutes, filed with the clerk of the Superior Court at Hartford five statements of compensation as against the plaintiff stating that the premises therein described were found to be located in the South Central Project, a redevelopment area in New Britain, and that the compensation to be paid for the premises was to be $1,000,000.  Thereafter, on December 8, 1964, the defendant caused to be filed in the office of the town clerk of New Britain five certificates of taking as to the premises.  See General Statutes § 8-129.  The plaintiff applied to the court for a review of the statements of compensation.  General Statutes § 8-132.  The court appointed a state referee to make the review.  He found the fair and reasonable value of the land, buildings and fixtures to be $4,119,000.  The plaintiff and the defendant filed motions with the referee asking him to correct his report in certain particulars.  The referee made only some of the suggested corrections.  The parties then filed exceptions with the

court. Both parties also objected to the acceptance of the report. The court refused to make any material corrections and rendered judgment on the referee's recommendation that $4,119,000 be paid as compensation for the taking. The defendant and the plaintiff both appealed.

The referee found these facts: The subject property consisted of a complex of multistory buildings on approximately 8.3 acres of level land. In the spring of 1961, the defendant commenced to negotiate with the plaintiff concerning a proposal whereby the defendant would cause the plaintiff's property to be included in a proposed redevelopment area known as the South Central Project and to be designated as property to be acquired by the defendant. Since the plaintiff was employing over 1200 employees in the tool manufacturing business, the relocation of the plaintiff's business in New Britain was a prerequisite to the inclusion of the subject property in the proposed project and its designation for acquisition by the defendant. The entire renewal project, including the incorporation of the plaintiff's property therein and its acquisition price was subject to the subsequent approval of the Federal Urban Renewal Administration.

In December, 1961, the boundaries of the proposed project were extended by the defendant to include the plaintiff's property. Thereafter, the parties agreed that the acquisition price of the plaintiff's property would be $4,200,000, which was to constitute payment for the land, buildings, fixtures and moving costs incurred by the plaintiff. To justify this price, the defendant in 1961 and 1962 caused two separate appraisals of the property and one appraisal of the fixtures to be made: the McDonald appraisal in the amount of $4,526,000; the Adams

appraisal of $4,168,000; and the Cahn appraisal of fixtures of $553,531. In May, 1962, the plaintiff, at the defendant's request, informed the defendant that the cost of moving to a new facility would be approximately $2,700,000.

During all of the negotiations, the plaintiff understood that the defendant could not enter into any binding agreement to acquire the property at the agreed upon acquisition price without the approval of the Federal Urban Renewal Administration. Nevertheless, in 1962, the plaintiff started to make plans for the construction of a new building. It employed an architect to prepare sketches of a new building. In the fall of 1962, the plaintiff sought and obtained a zoning change on other land in New Britain which it already owned and upon which the new plant was to be located. In March, 1963, the plaintiff, at the request of the defendant, signed an agreement to sell the property to the defendant or, in the alternative, consented to its condemnation for $4,200,000.

Relying on assurances by the defendant that the property would be acquired for the agreed price, the plaintiff in April, 1963, commenced the construction of the new plant although it realized that the requisite approval of the federal agency concerning inclusion of the subject property in the project and its acquisition price had not been given. The construction of the new plant was completed in January, 1964. Thereupon it immediately began to move its machinery to the new plant. By September 1, 1964, the move was completed. As a result of disconnecting, moving and reconnecting 1700 pieces of machinery, the plaintiff incurred moving costs of $2,008,206.

In the meantime, however, the Urban Renewal

Administration, although it approved the South Central Project which included the plaintiff's property, refused to approve the acquisition price of $4,200,000 for the plaintiff's property. Thereupon the defendant instituted the present eminent domain proceeding.

The referee found that the defendant, during the negotiations with the plaintiff, acted in good faith with every expectation that its recommendation would be adopted by the Urban Renewal Administration. His unchallenged conclusion was that the parties never entered into an enforceable agreement. For this reason, he recommended an award which represented the fair market value of the property on December 8, 1964, the date of the taking.

In preparation for a review by the referee, the plaintiff filed a motion in the trial court seeking an order compelling the defendant to answer certain interrogatories. One of these interrogatories called for the identity of all persons who had been asked to appraise the plaintiff's property on behalf of the defendant. Another called for the value or values which those who had appraised the plaintiff's property had assigned to that property. The motion also requested an order compelling the defendant to make available to the plaintiff all appraisal reports which had been submitted to it concerning the plaintiff's property.

The defendant objected to answering the interrogatories, claiming that the information sought was "confidential and privileged in nature between those persons [the appraisers] and the defendant." It also objected to producing the appraisal reports on the ground that they were the "work product of the defendant and are of a confidential nature." After a hearing on the motion, the trial court

ordered that the interrogatories be answered. It also ordered that the parties exchange all appraisal reports which had been made on behalf of either of them. The defendant claims the court erred both in ordering the interrogatories answered and in ordering the production of the appraisal reports.

The state courts are divided on the question whether or not the opinions of the other party's expert witnesses are the proper subject of pretrial discovery in an eminent domain proceeding. 6 Nichols, Eminent Domain (Rev. 3d Ed.) § 26.22; see also Friedenthal, "Discovery and Use of an Adverse Party's Expert Information," 14 Stan. L. Rev. 455, 474. This division of authority is due, in large part, to the fact that, today, pretrial discovery is largely governed by statutes and rules, and among the jurisdictions the language used in the pertinent statutes and rules often differs significantly. See note, 86 A.L.R.2d 138, 170–81. Looking to our own rules, we find the motion in question is governed by §§ 167 and 168 of the Practice Book.[1]

---

[1] "[Practice Book, Sec. 166. DISCOVERY] Sec. 167. ——COURT MAY ORDER In any civil action, the court, upon motion of any party, may order disclosure of facts or disclosure, production and inspection of papers, books or documents by any party thereto, material to the mover's cause of action or defense, and within the knowledge, possession or power of the party to whom the motion is addressed.

"Sec. 168. ——INTERROGATORIES, INSPECTION AND EXAMINATION For good cause shown, the court may compel disclosure by an order (1) for the answering of interrogatories as to fact or (2) for the production for inspection, or copying or other reproduction, of photographs, reports, papers, books, documents, maps and physical objects . . . .

"Good cause shall include a showing that the disclosure sought (a) would be of assistance in the prosecution or defense of such action, and (b) if not within the exclusive knowledge or power of the party sought to be interrogated, can be provided by such party with substantially greater facility than it could be otherwise obtained by the moving party. . . ."

At the outset it is apparent that, although in the context of the rules concerning pretrial discovery the "line between opinion and fact is often metaphysical"; *Fetterolf* v. *Levick,* 80 Pa. D. & C. 523, 526; the plaintiff's interrogatory which called for the values which the defendant's appraisers had placed on the plaintiff's property clearly called for the disclosure of opinions rather than of facts. No proper objection on this point, however, was raised by the defendant, and we need not consider the propriety of the court's order in that respect. The only objections which the defendant raised to the motion were that the information sought was confidential, privileged and a work product. The defendant goes on to assert that therefore it was an abuse of discretion for the court to order the disclosure of this information. The claim that the information was confidential apparently relates to an agreement the defendant had with its appraisers to the effect that the appraisers would not divulge the information they had gathered and the opinions they had formed without the prior consent of the defendant.

We fail to discern how such an agreement could in any way be pertinent in the present situation because the plaintiff sought the information in question from the defendant, not from the appraisers. In any event, the fact that the appraisal reports may have been requested by and submitted to the condemnor in confidence does not make the reports privileged communications. It is only where the report is in some way involved in a communication between an attorney and a client that it could take on a privileged character which would protect it from discovery. Note, 146 A.L.R. 977, 988.

The mere fact that a party has the report prepared because he anticipates future litigation is insufficient to clothe the report with the attorney-client privilege. See *Hurley* v. *Connecticut Co.,* 118 Conn. 276, 285, 172 A. 86. As the record is devoid of any indication that the appraisers' reports and their opinions as to the value of the plaintiff's property were in any way requested by or procured for the benefit of the defendant's counsel, we conclude the claim of privilege and confidentiality was properly rejected. See *Riddle Spring Realty Co.* v. *State,* 107 N.H. 271, 220 A.2d 751, 755.

This lack of involvement of counsel is also dispositive of the claim that the reports were a "work product." "Work product can be defined as the result of an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation." Ibid. The attorney's work must have formed an essential step in the procurement of the data which the opponent seeks, and the attorney must have performed duties normally attended to by attorneys. Ibid.; see also *Hickman* v. *Taylor,* 329 U.S. 495, 501, 511, 67 S. Ct. 385, 91 L. Ed. 451; *Scourtes* v. *Fred W. Albrecht Grocery Co.,* 15 F.R.D. 55, 58, 59 (D.N. Ohio). As we have noted, there is nothing in the record before us indicating that the appraisal reports were prepared pursuant to this rule. Even if the reports were the work product of an attorney, however, this would not necessarily make them immune to discovery. See *Hickman* v. *Taylor,* supra, 511. We cannot find as a matter of law that, considering only the objections which were raised, the court abused its discretion in ordering the mutual exchange of the appraisal reports for inspection and copying.

The defendant claims that the referee erred in

admitting into evidence the motion for disclosure, its response and certain appraisal reports which, it claims, contained matters which were irrelevant, immaterial and hearsay. It now asserts that the referee incorrectly assumed that he was required to admit into evidence the material the court had ordered disclosed. This assertion, although correct, comes too late. The defendant should have objected when the motion, the response and the reports were offered into evidence. It should have pointed out to the referee that this material was not ipso facto admissible and have stated the grounds why it deemed it inadmissible. Since it failed to object and to state the grounds of the objection as required by Practice Book § 226, this evidence was available to the referee subject to any inherent weaknesses. See *Sizer* v. *Lenney,* 146 Conn. 457, 459, 151 A.2d 889; *Poliner* v. *Fazino,* 105 Conn. 350, 353, 135 A. 289. The defendant contends that the referee erred in considering certain other appraisal reports which the defendant claims were never introduced into evidence. This claim concerns the reports referred to in the record as the McDonald report and the Adams report. The referee's report does not support the defendant's position that the referee considered the data in these reports or that they were admitted into evidence. The appraisal figures. appearing in the referee's report were obviously not taken from the appraisal reports themselves, but were taken from the response to the motion for disclosure, which, as we have noted, was, in the absence of proper objection, properly admitted.

At the hearing before the referee, Frank Jacko, an appraiser, gave testimony which included cross-examination by the defendant. During his examination, Jacko's appraisal report was admitted into evi-

dence. The defendant now claims for the first time that the referee erred in admitting the report. Since the defendant failed to request the referee to include in his report whatever ruling he may have made at the time the appraisal report was admitted, the question cannot now be raised on appeal. Practice Book §§ 358, 648; Maltbie, Conn. App. Proc. §§ 219, 127.

The defendant assigns error on the ruling of the referee in admitting the appraisal report of Karl G. Kaffenberger, Jr., who had appraised the plaintiff's property at the request of the defendant and who was called as a witness by the plaintiff to give his opinion concerning the fair and reasonable market value of the property. During his examination, the referee, on the request of the plaintiff, admitted the appraisal report of Kaffenberger over the objection of the defendant. The sole basis of the defendant's objection was that the report was a work product. As stated above, the record fails to substantiate the claim that the report was a work product. Furthermore, application of the work-product rule only applies in pretrial disclosure. It is not an exclusionary rule of evidence.

Another ruling on evidence challenged by the defendant stems from the failure of the referee to comprehend the scope of the order of the trial court concerning the production of the appraiser's report. As we have noted, the order did not require the referee to admit the reports, but simply ordered that the reports be made available to the plaintiff for inspection and copying. William H. Ball was requested by the defendant to analyze the appraisal reports. By letter dated September 9, 1964, Ball set forth his analysis of the appraisal reports. The referee admitted this letter into evidence over the

objection of the defendant. The defendant's sole ground of objection was that the letter was a work product of the defendant. Therefore, the defendant is confined to that ground of objection. *Salvatore* v. *Hayden,* 144 Conn. 437, 443, 133 A.2d 622. We do not construe the letter as being a work product. In any event, this is not an appropriate objection at the trial stage.

The defendant in its brief contends that the referee erred "in admitting and considering other immaterial and irrelevant matter." A substantial amount of evidence is set forth in the appendix to the defendant's brief. The defendant now argues that the referee erred in admitting and in considering this evidence. The defendant, however, has failed to have these claims properly included in the record; Practice Book § 648; and we shall not consider them. *Martyn* v. *Donlin,* 148 Conn. 27, 30, 166 A.2d 856; *Metz* v. *Hvass Construction Co.,* 144 Conn. 535, 538, 135 A.2d 363.

The defendant's next claim is that the referee erred in selecting the income approach as the method of arriving at the value of the plaintiff's property. Seven different appraisals of the property were caused to be made: one by the plaintiff in the amount of $3,766,000, and six by the defendant which ranged from a low of $800,000 to a high of $4,526,000. The referee adopted the opinion of the plaintiff's expert and found the value of the land and buildings as determined by the income approach to be $3,766,000.

The defendant asserts that the comparative sales approach would have been a more suitable method for determining the value of the premises. The plaintiff's expert, whose appraisal the referee adopted, gave consideration to the comparative

sales approach, as well as to the reproduction-cost approach. He concluded, however, that the income approach was the most suitable method to use in arriving at an estimate of the value of the property. All of the appraisers who testified at the hearing before the referee gave consideration to the income-approach method. Two of the defendant's experts used it as their primary method of estimating the value of the land and buildings.

The referee personally inspected the subject property. No one appraisal method was controlling on him. *Moss* v. *New Haven Redevelopment Agency,* 146 Conn. 421, 425, 151 A.2d 693; *Lomas & Nettleton Co.* v. *Waterbury,* 122 Conn. 228, 233, 188 A. 433. He had the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he found applicable. *Moss* v. *New Haven Redevelopment Agency,* supra. The exercise of this right would be reviewable only if it were apparent that "the referee misapplied or overlooked, or gave a wrong or improper effect to, any test or consideration which it was his duty to regard." *Bennett* v. *New Haven Redevelopment Agency,* 148 Conn. 513, 516, 172 A.2d 612; *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641.

It is clear that the referee did not err in adopting the income-approach method which had been utilized by the plaintiff's expert. This determination, however, leads us to the defendant's next assignment of error, which is that the referee misapplied the income-approach method of evaluation.

The defendant claims that the income-approach method was erroneously applied by the plaintiff's expert, and, when the referee adopted the approach of this expert, he adopted his error. The defendant asserts that, when the plaintiff's expert appraised

the plaintiff's land, he determined the highest and best use to which it could be put would be to commercial use and he fixed the value of the land accordingly. The defendant claims that to place a commercial value on the land and an industrial value on the buildings, without taking into account that the buildings would have to be demolished before the land could be put to commercial use, was erroneous. The defendant goes on to claim that this erroneous intermingling of uses when fixing value led to an inflated and unrealistic value being placed on the plaintiff's property.

We need not dwell on this specific assignment of error because the premise upon which it is based is unsound. It is true that during his testimony before the referee, the plaintiff's expert testified that, if the land in question were vacant, the best use to which the vacant land could be put would be to a commercial use. From the report of the plaintiff's expert, it is clear, however, that when he actually evaluated the plaintiff's land he did not consider it to be vacant, undeveloped land readily suitable for commercial purposes. Rather, he gauged the value of the land fully realizing and appreciating that there was a substantial industrial complex on the land. His report states that he felt the highest and best use to which the property could be put, considering the substantial industrial buildings thereon, would be to industrial use. He therefore considered the land as industrial land, not commercial land, in arriving at its value. Therefore, the method which the defendant claims was objectionable was, in fact, not utilized, and the defendant's claim is without merit.

The defendant's final claim is that the referee erred when he added to the value of the land and

buildings, as determined by the income approach, the value of the fixtures on the property. Its claim is that these fixtures are to be considered a part of the income-generating capacity of the buildings and, because they are taken into account under the income approach, it would amount to double payment for these fixtures to add their value to the determined value of the land and buildings. The record fails to support the defendant's position. The plaintiff's expert expressly excluded consideration of the fixtures in his application of the income approach. Therefore, it was proper for the referee to consider what effect the value of these fixtures might have on the value of the land and buildings. He determined that they enhanced the value of the property by $353,000. He therefore added this sum to the value of the land and buildings which he had already ascertained to be $3,766,000.

Nothing in the record indicates that the referee erred in fixing the value of the plaintiff's property at $4,119,000.

We shall now discuss the plaintiff's appeal. The plaintiff does not directly attack the award of $4,119,000, which is the value the referee placed on the land, buildings and fixtures. It does claim, however, that the referee erred in refusing to award or even consider the $2,008,206 costs which it had incurred as a result of disconnecting, moving and reconnecting its machinery and equipment which were formerly located in the now condemned buildings. The referee declined to consider this expense on two grounds. First, since the plaintiff had signified its willingness in writing to accept $4,200,000 for the property, which price was to include moving costs, the award could not exceed that amount. Second, as the move antedated the taking, the cost

of moving could not be considered as a factor affecting value on the date of taking.

Having found that the plaintiff was not bound by the written instrument by which it agreed to sell the property for $4,200,000, the referee was not limited by that amount in fixing the amount of his award. It was his responsibility to make an award of just compensation. See Conn. Const. (1965), art. 1 § 11; General Statutes § 8-129.

"[J]ust compensation means a fair equivalent in money for the property taken as nearly as its nature will permit." *DelVecchio* v. *New Haven Redevelopment Agency,* 147 Conn. 362, 363, 161 A.2d 190 (quoting from *Winchester* v. *Cox,* 129 Conn. 106, 114, 26 A.2d 592). In the present case, the fair market value of the property was a proper measure of just compensation. In a determination of the fair market value, it is proper to consider all the elements which an owner and a prospective purchaser could reasonably urge as factors influencing the price of the property which legitimately affect its value. *DelVecchio* v. *New Haven Redevelopment Agency,* supra, 364; *Humphrey* v. *Argraves,* 145 Conn. 350, 353, 143 A.2d 432. One factor which a trier may consider is the expense an owner is compelled to incur in moving machinery from the condemned property to another location. *Hunter Press, Inc.* v. *Ives,* 150 Conn. 32, 34, 183 A.2d 842; *DelVecchio* v. *New Haven Redevelopment Agency,* supra, 364, 365; *Harvey Textile Co.* v. *Hill,* 135 Conn. 686, 689, 67 A.2d 851. We have, however, repeatedly stated that only those factors in existence on the date of the taking may be considered by the trier. See, for example, *Colaluca* v. *Ives,* 150 Conn. 521, 531, 191 A.2d 340; *DelVecchio* v. *New Haven Redevelopment Agency,* supra, 365. Here

the referee correctly considered the date of the taking as the date on which the defendant recorded its certificates of taking, namely, December 8, 1964. General Statutes § 8-129; *Research Associates, Inc.* v. *New Haven Redevelopment Agency,* 152 Conn. 137, 140, 204 A.2d 833. As the plaintiff had voluntarily commenced to move almost a year before that date and had completed its move over three months before that date, the referee correctly concluded that, since the necessity of moving equipment and machinery from the buildings was not a factor then in existence, moving cost could not be considered as a factor affecting the property's value.

The plaintiff asserts that because the activities of the defendant prior to December 8, 1964, were the proximate cause of the plaintiff's early move, it would be manifestly inequitable and against public policy to allow the defendant to benefit from this early move which eliminated a value factor from the property.

If the plaintiff felt that equitable considerations were such that a date other than the date of the recording of the certificates of taking should be fixed as the true date of the taking, it was incumbent upon it to present its claim to the Superior Court before the court made the reference. *Research Associates, Inc.* v. *New Haven Redevelopment Agency,* supra, 140, 141. In that way, the court could then decide whether a different date should be fixed as the taking date, and, when the reference was made, the referee could assess the factors as they existed on the date set by the court as the actual taking date. Ibid.

To allow the condemnee, however, to stress not only factors which existed on the unchallenged date of taking but also other factors which antedate that

date would only lead a trier into the field of speculation and conjecture.

There is no error on either appeal.

In this opinion the other judges concurred.