In this paternity action appeal, the defendant has assigned as errors (1) the inquiry by the trial court concerning communications which the defendant had with his attorney, as a breach of the attorney-client privilege; (2) the conduct and the attitude of the trial court in engaging in extensive questioning of the defendant; and (3) the refusal of the trial court to permit the defendant to examine the records of the state welfare department which were used as a basis for the refreshing of the memory of the witness.
The underlying facts are fairly simple. The plaintiff, a married woman separated from her husband, was the mother of a child, Tracy Lynn, born in Hartford, Connecticut, on July 15, 1966. She accused the defendant of being the putative father of this child and identified him as the only person with whom she had sexual relations during the one-year period prior to the above-mentioned birth. She contended that he was the father and that she had named him as the father on the birth certificate and to the welfare department. The defendant denied any contact with the plaintiff and stated that his association with her was limited to verbal conversation and visual observation. He denied the paternity, claiming that he had seen her only occasionally during 1965 and had not seen her at all after July, 1965, when she moved into the apartment of another man. He contended that he was first notified of her allegations linking him to the paternity of this child when he was served with the complaint in February, 1969.
At the trial, after the defendant had testified on cross-examination that he was first notified by the complaint that Georgia Miller claimed that he was the father of Tracy Lynn, the court examined him as to why he did not contact the plaintiff. He replied that he did not know where she was. The court then *Page 503 
asked him, "Well, you did get in touch with your lawyer, didn't you?" The defendant replied, "Right." Thereafter, after several transcript pages of questions asked of the defendant by the court, the following occurred. "The court: Now you knew nothing about anybody claiming that you were the father of this child until 1969 when the papers were served on you? A. — Correct. The court: How did you happen to contact Mr. Gravely and Mr. Googe about this case? A. — Well I went to my lawyer and we went over the case and he asked me if there were witnesses. The court: You went to your lawyer and he asked you if you had any witnesses? A. — Yes. The court: Witnesses to what? A. — Witnesses to the way we were going to handle the case. Mr. Wladimer: Again I object to this line of questioning, particularly this privileged communication between client and attorney, Your Honor. Now Your Honor did not question or cross-examine Mr. Graham. I think that it's highly improper for the court to cross-examine my client."
The common-law principle of attorney-client privilege is most commonly defined as follows: "`Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by his client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived.' 8 Wigmore, Evidence § 2292, p. 554 (McNaughton Rev. 1961) . . . ." Rienzo v. Santangelo, 160 Conn. 391,395; see also a similar passage in 5 Wigmore, Evidence (2d Ed.) § 2292, quoted in Doyle v. Reeves,112 Conn. 521, 523.
In Connecticut, this principle has been more succinctly stated by the court: "Generally, conversations . . . between attorney and client are privileged and inadmissible in evidence." McWilliams v. American *Page 504 Fidelity Co., 140 Conn. 572, 581. There is no Connecticut statute altering this rule, although its requirements and limitations have been further defined by the courts and rules of practice. First, to be privileged, communications between attorney and client must be confidential, i.e. must not have been divulged to or overheard by any third party. State
v. Hanna, 150 Conn. 457, 466; Doyle v. Reeves,
supra; Turner's Appeal, 72 Conn. 305, 318. The burden of proving the facts essential to the privilege is on the person asserting it. McWilliams v. AmericanFidelity Co., supra; United States v. Kovel,296 F.2d 918, 921. This burden includes, of course, the burden of proving the essential element that the communication was confidential. State v. Hanna,
supra; 8 Wigmore, Evidence § 2311, pp. 599-600 (McNaughton Rev. 1961).
Here, however, it was undisputed that the inquiry conducted by the trial court concerned the initial consultation between the defendant and his trial counsel and that the subject of the inquiry was the trial strategy in the defense against the claims set forth against him. This clearly fell within the scope of privileged communications. The client may not be required to divulge the advice which his attorney gave him. 97 C.J.S., Witnesses, § 283. Generally, the privilege extends to whatever an attorney learned from his client in the course of preparing a case for trial. 97 C.J.S., Witnesses, § 289. The privilege, however, goes no further than is necessary to secure the client's subjective freedom of consultation.State v. Hanna, supra. Thus, within these limits, the privilege has been extended to protect the client, not only the attorney, as was the original intent of the common-law rule: "The privilege being for the protection of the client in his subjective freedom of consultation, it would obviously be defeated if the disclosure of the confidences, *Page 505 
though not compellable from the attorney, was still obtainable from the client." Rienzo v. Santangelo,
supra.
Whether a communication is privileged is a question for the trial court. In order to make this determination, it is proper for the court to make a preliminary inquiry looking to all the surrounding facts and circumstances and to hear testimony relative thereto in the absence of the jury. The court must first determine the question of privilege without first requiring disclosure of the communication.Steiner v. United States, 134 F.2d 931, 935, cert. denied, 319 U.S. 774.
With regard to the question of the waiver of the privilege, Rienzo v. Santangelo, supra, states: "The client's offer of his own testimony in the cause at large does not constitute a waiver for the purpose either of cross-examining him as to the communications or of calling the attorney to prove them."
In the instant case the question this court is asked to decide is whether the trial court required the defendant to disclose privileged material and whether its action constituted prejudicial and harmful error. We are inclined to answer both these questions in the affirmative. The trial court made direct inquiries into the nature of conversations the defendant had with counsel while the case was being prepared for trial. Over the objections of counsel, it made inquiries into the manner in which two defense witnesses were selected; disclosures of confidential and therefore privileged conversations were involved. These disclosures are clearly within the limits of privileged communications as set forth above. Their admission into evidence, on the questions, and on the insistence, of the trial court itself, is an abridgment of the client's subjective freedom of consultation which the privilege was designed to protect. *Page 506 
It is noted that the trial court made no preliminary inquiry into the nature of the communications, such as was conducted by the court in Rienzo v. Santangelo,
supra. The defense counsel was disadvantaged further because the questioning was conducted by the court rather than by opposing counsel. The defendant's subsequent testimony over the objection of counsel cannot be interpreted by this court as constituting a waiver of the privilege. The introduction of these privileged communications into evidence was prejudicial to the defendant. It tended to impair not only his credibility as a witness but also the credibility of the two other defense witnesses who were the subject matter of the inquiry.
In view of the position which this court has taken on the above assignment of error, it is unnecessary to consider the other assignments of error. The two assignments of error concerning the breach of the confidential communication between attorney and client are, however, tied inextricably with the claim that the trial court abused its discretion in conducting an extensive cross-examination of the defendant. It should be noted that the Supreme Court in LaChase v. Sanders, 142 Conn. 122, 125, stated: "`Judges should refrain from extended examination of witnesses; they should not, during the trial, indicate an opinion on the merits, a doubt as to the [witnesses'] credibility, or do anything to indicate a leaning to one side or the other, without explaining to the jury that all these matters are for them.' In whatever he does, the trial judge should be cautious and circumspect in his language and conduct. He should refrain at all times from indulging in any improper remarks that may injure a litigant in the eyes of the jury. Felix v. Hall-Brooke Sanitarium,140 Conn. 496, 502 . . . ." The plaintiff in this case was represented during the course of the trial by competent counsel who was capable of conducting *Page 507 
a cross-examination of the defense witnesses sufficient for the protection of his client's rights. The court could have relied on the presence of such counsel and, under all the circumstances, more properly should have permitted counsel to determine the nature and extent of the cross-examination.
Inasmuch as the question raised by the last assignment of error will most likely not arise on a retrial, we need not consider it in the disposition of this appeal.
 There is error, the judgment is set aside and a new trial is ordered.
In this opinion MIGNONE and MISSAL, Js., concurred.