Procedural Background
The plaintiff, Carrier Corporation ("Carrier"), has brought this declaratory judgment action to determine whether the defendant insurance companies must indemnify the plaintiff for cleanup costs, liability and fines, and defense costs incurred in connection with alleged hazardous waste contamination occurring at approximately forty-four sites in which the plaintiff has been or will be held liable for environmental damage. This case has involved hundreds of defendants, although not all of the defendants remain; the discovery requests have concerned hundreds of thousands of documents. Indeed, the privilege log alone involves over ten thousand documents. CT Page 5499
The defendants in this case have undertaken a joint defense, and will be referred to herein as the defendants or joint defendants except where otherwise indicated.
The procedural history relevant to the instant motion follows:
On April 18, 1989, Carrier filed responses to the defendants' first set of interrogatories and requests for production of documents. Pursuant to the Case Management Order dated August 29, 1989, Carrier compiled a log for all documents withheld on the basis of claims of privilege and work product. According to the Case Management Order, the privilege log was required to contain, for each document withheld on the grounds of privilege or work product, information pertaining to the type of document, the number, date, author, addressee, recipients of copies, the subject matter, as well as the legal basis for withholding the document.
The defendants, arguing that the privilege log compiled by the plaintiff fell short of the requirements of the Case Management Order by failing to set forth with adequate specificity the subject matter of the documents withheld and the legal basis for withholding them, filed a motion for compliance on September 26, 1990. In that motion, the defendants sought an order requiring Carrier to revise its privilege log and to produce certain documents put at issue by the plaintiff through the filing of the underlying declaratory judgment action. The motion was heard by the court, Koletsky, J., who, on September 11, 1991, ordered, inter alia, that the plaintiff revise its privilege log to include with more specificity the information requested by the defendants and required by the earlier case management order, and that the privilege log conform "in terms of the amount of information disclosed and the specificity of the information" to the privilege log prepared by defendant Travelers in response to the plaintiff's request for production.
In response to Judge Koletsky's order, the plaintiff compiled and submitted a supplemental privilege log which included some of the additional information required by Judge Koletsky. The defendants claim, however, that the plaintiff has yet to comply with the guidelines set forth by Judge Koletsky, and that the plaintiff has otherwise failed to provide sufficient information in its supplemental privilege log to support its asserted claims of privilege and work product protection. In their renewed joint motion for compliance, the defendants request the court to order the plaintiff to produce all documents for which the supplemental privilege log entry does not meet or exceed the specificity required by Judge Koletsky's September 11, 1991 ruling; all documents for which the supplemental privilege log entry does not adequately support the plaintiff's claims of attorney-client privilege or work product protection; all documents relating to matters CT Page 5500 which the plaintiff has put at issue by its claims for defense and indemnification; and other just and equitable relief. The defendants' motion is supported by a memorandum of law, a reply memorandum, and by copious exhibits, submissions, and affidavits. . .
The plaintiff has objected to the motion, arguing, inter alia, that the law of the case prevents the defendants from reopening issues resolved by Judge Koletsky's September 11, 1991 order, that the supplemental privilege log complies with that order, that the plaintiff does not lose its attorney-client privilege or its work product protection simply by filing this lawsuit against its insurers. Plaintiff further argues that neither Judge Koletsky's order nor Connecticut law support the defendants' argument that attorney involvement is required to support a claim for work product protection. The plaintiff has supported its objection with a memorandum of law, a supplemental memorandum, and with numerous exhibits and submissions.
Issues
A. THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT CLAIMS
1. Attorney-Client Privilege
In their renewed joint motion for compliance, the defendants have raised at least three issues with respect to the plaintiff's claims of attorney-client privilege. First, the defendants argue that public, business, or technical information is not privileged; second, that communications to or from an attorney are privileged only when such communications take place within the context of an attorney-client relationship and when confidential communications are in fact, made for the purpose of seeking legal advice; and, third, that communications sent to third parties, with a copy to the plaintiff's attorneys, are not confidential and, therefore, not protected by the privilege.
"The basic principles of the attorney-client privilege are undisputed. Communications between the client and attorney are privileged when made in confidence for the purpose of seeking legal advice." State v. Burak, 201 Conn. 517, 527, 518 A.2d 639
(1986), citing Doyle v. Reeves, 112 Conn. 521, 523, 152 A. 882
(1931); Tait LaPlante, Handbook of Connecticut Evidence (1976) 12.5. A widely-cited formulation of the privilege states that: "(1) where legal advice of any kind is sought; (2) from a professional legal adviser in his capacity as such; (3) communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal adviser; (8) except the protection be waived." Rienzo v. Santangelo, 160 Conn. 391, 395, CT Page 5501279 A.2d 565 (1971); United States v. Goldfarb, 328 F.2d 280, 281
(6th Cir. 1964); see also Wigmore, Wigmore on Evidence, 292, p. 584 (McNaughton Rev. 1961). The plaintiff's claims of attorney-client privilege must satisfy these elements as they have been interpreted by decisional law and as more fully set forth below.
The burden of proving facts essential to the privilege is on the person asserting it. State v. Hanna, 150 Conn. 457, 465-66,191 A.2d 124 (1963); Tunick v. Day, Berry Howard, 40 Conn. Sup. 216,219, 486 A.2d 1147 (1984). The question of whether a communication is privileged is a question of law for the court to decide. Miller v. Anderson, 30 Conn. Sup. 501, 505,294 A.2d 344 (App.Div. 1972).
The defendants' first argument is that the public, business, and technical information is not protected by the privilege. In fact, public information is not protected by the attorney-client privilege. Syracuse Supply Co. v. U.S. Lumber Co., 40 Conn. Sup. 198,201, 484 A.2d 1377 (1985, Fracasse, J.); SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 515 (1976). Technical information, such as the results of research, tests and experiments, communicated to an attorney, is not protected by the attorney-client privilege unless such information is communicated to the attorney for a legal opinion or interpretation. Hercules. Inc. v. Exxon Corp.,434 F. Sup. 136, 147 (citations omitted); see also Willemijn Houdstermaatschaapij BV v. Apollo Computer, 707 F. Sup. 1429,1448-49 (D.Del. 1989).The privilege does not protect non-legal communications, including business and technical advice, unless the communications are intended to meet problems which can be characterized as predominantly legal. Cuno, Inc. v. Pall Corp., 121 F.R.D. 19, 203-4 (E.D.N.Y. 1988). "Only if the attorney is `acting as a lawyer' — giving advice as to the legal implications of a proposed course of business — may the privilege be properly invoked." (Emphasis added.) Willemijn Houdstermaatschaapij BV v. Apollo Computer, supra, 1448, quoting Hercules, Inc. v. Exxon Corp., supra, 147.
The attorney-client privilege attaches to the communication itself, not to the facts communicated, and, therefore, may not be used to protect the disclosure of underlying facts to opposing counsel. Buford v. Holladay, 133 F.R.D. 487, 491 (S.D. Miss. 1990); Solomon v. Scientific American, Inc., 125 F.R.D. 34, 37
(S.D.N.Y. 1988). "Legal departments are not citadels into which public, business or technical information may be placed to defeat discovery and thereby ensure confidentiality." SCM Corp. v. Xerox Corp., supra, 515 (1976). Thus, the attorney-client privilege does not protect documents or communications that can be characterized as conveying purely technical or business information, nor does the privilege protect against the disclosure of the facts communicated. "Whatever legal judgments are contained in CT Page 5502 the documents would merit protection, if at all, as work product, not by application of the attorney-client privilege. Hickman v. Taylor, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947)." SCM Corp. v. Xerox, supra, 515.
Because the privilege exists only to secure the client's subjective freedom of communication, State v. Hanna, supra, 466, Syracuse Supply Co. v. U.S. Lumber Co., supra, 201, the communication sought to be protected by the attorney-client privilege must be confidential, LaFaive v. DiLoreto, 2 Conn. App. 58, 65,476 A.2d 626 (1984), citing State v. Hanna, supra, 466. The attorney-client privilege applies only to "that information born of confidential communication." Trumpold v. Besch, 19 Conn. App. 22,28, 561 A.2d 438, cert. denied, 212 Conn. 812 (1989), cert. denied, 100 S.Ct. 1476. A communication made to or in the presence of third parties is not privileged "unless those other individuals present are agents or employees of the attorney or the client and their presence is necessary to the consultation." State v. Gordon,197 Conn. 413, 424, 497 A.2d 965, 504 A.2d 1020 (1985).
The hallmark of a privileged communication is that it must be disclosed by the client to the attorney with a "reasonable expectation of confidentiality." State v. Burak, supra, 526, citing State v. Colton, 174 Conn. 13, 138-39, 384 A.2d 343 (1977). It is a reality of our adversary system, however, that attorneys must often rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. United States v. Nobles, 422 U.S. 225, 237-38, 95 S.Ct. 2160, 45 L.Ed.2d 141
(1975); United Coal Companies v. Powell Construction Co.,839 F.2d 958, 966 (3rd Cir. 1988). For that reason, the attorney-client privilege may be used to protect communications made through agents for communication and to persons hired by the attorney to collect and assemble facts necessary for the representation, but to no greater extent than they would have been had they been made directly between the principals. Syracuse Supply Co. v. U.S. Lumber Co., supra, 201. Therefore, where a client invokes the attorney-client privilege for communications made by, to, or in the presence of third parties other than the client or the attorney, such third parties must be agents of either the attorney or the client, and such parties must be "necessary to the consultation." State v. Gordon, supra, 424.
Where the party asserting the attorney-client privilege is a corporation, the court must also determine which officers or employees constitute the "corporate client." The Connecticut courts have not yet developed or adopted a test to determine the scope of the attorney-client privilege in this situation. According to the "control group" test, which is the traditional method for determining the identity of the corporate "client," an employee or other representative of a corporation may be considered the client "if the CT Page 5503 employee making the communication . . . is in a position to control or even to take a substantial part in the decision about any action which the corporation may take upon the advice of the attorney." City of Philadelphia v. Westinghouse Electric Corp.,210 F. Sup. 483, 485 (E.D. Pa. 1962). The United States Supreme Court has declined to adopt as determinative the control group test, opting instead for a case by case, fact-oriented approach rather than a broad statement of principle. See Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677,66 L.Ed.2d 584 (1981). In doing so, the Court noted that the control group test may be too narrow in that it "frustrates the very purpose of the privilege by discouraging the communication of relevant information by employees of the client to attorneys seeking to render legal advice to the client corporation." Id., 392. Responding to this and like criticism, the New York courts have formulated the following test: in order for the attorney-client privilege to apply in the corporate context: (1) the communication should have been made for the purpose of securing legal advice; (2) the employee making the communication should have done so at the direction of his corporate superiors; (3) the superiors should have made the request so that the corporation could secure legal advice; (4) the subject matter of the communication should have been within the scope of the employee's duties; (5) and the communication should not have been disseminated beyond those persons who needed to know the information. Cuno, Inc. v. Pall Corp., supra, 203-4.
The court finds the New York test satisfactory in that it protects the corporation's right to seek the advice of counsel, while at the same time ensuring that the communications protected are clothed in at least some degree of confidentiality. Accordingly, this test shall be applied to determine the scope of the privilege where the client is a corporation. It is thus incumbent upon the plaintiff to prove, in addition to the above outlined general rules of attorney-client privilege, each element of the test for application of the privilege in the corporate context.
2. Work Product
In their motion to compel production of documents withheld by the plaintiff on the ground of work product protection, the defendants argue that, for the protection to apply, documentary and other evidence must have been prepared: (1) by or at the request of an attorney; (2) in anticipation of litigation; and (3) by the party or by the party's representative. These issues will be considered together. The Connecticut Supreme Court has defined work product as "the result of an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation." Stanley Works v. New Britain Redevelopment Agency, 155 Conn. 86, 95, 230 A.2d 9 (1967). The definition of CT Page 5504 work product has since been revised and codified in Practice Book 219, which states that:
 a party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative only upon a showing that the party seeking discovery has a substantial need of the materials in preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials . . . the court shall not order disclosure of the mental impressions, conclusions, legal opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
The burden of establishing that the information sought constitutes work product is upon the party asserting such a claim. Buckland v. New Haven Podiatry Associates, 4 CSCR 176 (January 10, 1989, Flanagan, J.), citing Hydramar, Inc. v. General Dynamics Corp., 119 F.R.D. 367, 369 (E.D. Pa. 1988); Conoco, Inc. v. United States Dept. of Justice, 687 F.2d 724, 730 (3d cir. 1982). The Practice Book definition of work product extends only to materials prepared "by or for another party or by or for that party's representative." Practice Book 219. The Stanley Works decision included an additional requirement that "[t]he attorney's work must have formed an essential step in the procurement of the data which the opponent seeks, and the attorney must have performed duties normally attended to by attorneys." Stanley Works v. New Britain Redevelopment Agency, supra. The parties disagree on the issue of whether this requirement was modified by the subsequent amendment of the Practice Book, which does not contain an "attorney involvement" requirement, or whether the term "representative" contained in the Practice Book definition of work product incorporates this requirement.
While the Practice Book did not adopt language identical to that contained in the Stanley Works decision, numerous cases decided since the adoption of Practice Book 219 have cited Stanley Works in holding that attorney involvement is a necessary element of the work-product doctrine, while none have held that attorney involvement is not required. See, e.g., Witkowski v. Gryboski, 5 Conn. L. Rptr. 417, 417-418 (January 2, 1992, Sheldon, J.); Emerick v. Moraes, J.D. Hartford-New Britain at Hartford (January 3, 1992, Walsh, J.); Litwak v. Lemans,1 Conn. L. Rptr. 778, 779 (Jun. 19, 1990, Jones, J.); Gonzalez v. White, Jr.,5 CSCR 545 (June 18, 1990 Jones, J.); Falvey's Inc. v. Republic Oil Co., Inc., 3 CSCR 931, 932 (November 3, 1988, Schimelman, J.). "Connecticut has adopted a narrower concept of the work product privilege; i.e., the privilege is limited to work product of lawyers." Falvey's Inc. v. Republic Oil Co., Inc., supra, 932 CT Page 5505 (emphasis added), citing Jacques v. Cassidy, 28 Conn. Sup. 212,219 (Super.Ct. 1969). Thus, a lack of involvement by plaintiff's counsel in securing the requested information would bar the application of the work-product privilege to the requested information. Jacques v. Cassidy, supra; see also Litwak v. Lemans, supra, 779; Gonzalez v. White, Jr., supra, 545. The court concludes that "attorney involvement" in the production of the requested documents or information is required.
Unlike the "attorney involvement" element of the work product doctrine, the "in anticipation of litigation" requirement was made express by the adoption of Practice Book 219, which limits application of the work product rule to materials "prepared in anticipation of litigation or for trial." This requirement seeks to distinguish between materials prepared in the ordinary course of business, which are "clearly discoverable under Practice Book 218," and those prepared for litigation, which may be protected by the work product rule, a distinction which can become particularly problematic where both motives are involved. See Falvey's, Inc. v. Republic Oil Co., supra, 932.
The Stanley Works decision provides work product protection for the products of an attorney's activities "when those activities have been conducted with a view to pending or anticipated litigation." Stanley Works v. New Britain Redevelopment Agency, supra, 95. The Falvey's court noted that "certainly, litigation is a contingency to be recognized" where the allegedly improper disposal of hazardous wastes is involved, but "given the equally reasonable desire" of the plaintiffs to satisfy governmental orders, "it cannot be said that the plaintiff's records were not prepared in the ordinary course of business." Falvey's, Inc. v. Republic Oil Co., supra, 932 (finding that the materials at issue had in fact been prepared in anticipation of litigation). A more restrictive application of the work-product rule was recognized in Lieberman v. Freedom of Information Commission, 3 CSCR 711, 712
(August 2, 1988, Ripley, J.), where it was held that work product protection only applies to materials obtained or produced when a "specific legal action is pending or contemplated." (Emphasis added.) Id.
Because application of the work product doctrine tends to prevent a full disclosure of facts relevant to the truthful disposition of a case, and because the rule is an exception to the general rule permitting discovery of "documents and tangible things," State v. Cascone, 195 Conn. 183 186, 487 A.2d 186, appeal after remand, 10 Conn. App. 163, cert. denied, 203 Conn. 808 (1985), the rule should be narrowly interpreted. Accordingly, the work product rule may be used to protect against disclosure of materials or facts obtained or produced by an attorney or the attorney's representative in preparation for a particular litigation, pending or CT Page 5506 reasonably anticipated; materials otherwise subject to discovery may be subject to a motion to compel.
B. THE "AT ISSUE" EXCEPTION AND RELATED ISSUES
1. The "Placing-at-Issue" Issue
The defendants have advanced the argument that fairness and equity require that the plaintiff produce documents relating to matters that the plaintiff has itself put into issue by filing this declaratory judgment action. The plaintiff argues in response that it does not forfeit its attorney-client privilege or its work product protection simply because it exercises the right to enforce its rights under the various contracts of insurance at issue in this action.
It is noted that no Connecticut appellate court has addressed the "at issue" exception to the attorney-client privilege. However, courts in other jurisdictions have addressed the issue, although with varying conclusions. See, e.g., Handgards, Inc. v. Johnson Johnson, Inc., 413 F. Sup. 926, 929 (N.D. Cal. 1976); Truck Insurance Exchange v. St. Paul Fire Marine Insurance Co.,22 F.R.D. 129 (E.D. Pa. 1973); Sedco International, S.A. v. Cory,683 F.2d 1201 (8th Cir.), cert. denied, 459 U.S. 1017 (1982); Lorenz v. Valley Forge Ins. Co., 815 F.2d 1095 (7th Cir. 1987); Leucadia, Inc. v. Reliance Ins. Co., 101 F.R.D. 674 (S.D.N Y 1983); see also Note, Developments in the Law of Privileged Communications, 98 Harv. L. Rev. 1450, 1637-43 (1985). While these and other cases have identified the existence of an "at issue" exception, also known as the doctrine of implied waiver, there is little consensus on its scope and application.
The attorney-client privilege exists only to secure the client's subjective freedom of consultation with his or her professional legal adviser, State v. Hanna, supra 465-66, while the work product rule is designed to protect the right of an attorney to thoroughly prepare a case by precluding a less diligent adversary from taking undue advantage of an opponent's efforts. See Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 835, 91 L.Ed. 451 (1947); Falvey's Inc. v. Republic Oil Co., Inc., supra, 932. Because the exercise of these protections are viewed as obstructing the truth-finding process and tending to prevent a full disclosure of the truth, the scope of the protections is narrowly construed. State v. Cascone, supra, 186; see also Fine v. Facet Aerospace Products Co., 133 F.R.D. 439 (S.D.N.Y. 1990). Thus, the injury that would inure to the attorney-client relation by the disclosure of the communication must be greater than the benefit thereby gained for the correct disposal of litigation before the privilege may be upheld. See State v. Cascone, supra; 8 Wigmore, Wigmore on Evidence, (McNaughten Rev. 1961) 2285, p. 527. Furthermore, CT Page 5507 the attorney-client privilege should be applied only when necessary to effect its limited purpose of encouraging complete disclosure by the client to the attorney; the work product privilege should be applied only where necessary to protect those aspects of the adversarial system which underlie its existence. See Torney v. U.S., 840 F.2d 1424, 1428 (9th Cir. 1988). In addition, the privilege may not be used to prejudice an opponent's case or to disclose some selected communications for self-serving purposes. U.S. v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991); In re Von Bulow, 828 F.2d 91, 101-2 (2d Cir. 1987).
 In a civil damages action, fairness requires that the privilege holder surrender the privilege to the extent that it will weaken in a meaningful way, the defendant's ability to defend. That is, the privilege ends at the point where the defendant can show that the plaintiff's civil claims, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails.
Greater Newburyport Clamshell Alliance v. Public Service Co. of New Hampshire, 838 F.2d 13, 20 (1st Cir. 1988).
The "at issue" doctrine, itself, originally gained acceptance in situations where the holder of the privilege relies on a legal claim or defense, the truthful resolution of which requires consideration of the confidential communications. See, e.g., Byers v. Burleson,100 F.R.D. 436, 440 (D.D.C. 1983) (legal malpractice action); Handgards, Inc. v. Johnson Johnson, Inc., supra, 929 (special defense of good faith reliance on the advice of counsel); Tasby v. United States, 504 F.2d 332, 36 (8th Cir.), cert. denied, 419 U.S. 1125
(1975) (criminal defendant appealing on the grounds of inadequate legal representation). Hearn v. Ray, 68 F.R.D. 574
(E.D. Wash. 1979) held that the "placing-at-issue" waiver applies where the privilege holder, through some affirmative act, makes an assertion that renders otherwise privileged matter directly relevant to the action, and where upholding the privilege would deprive the opposing party of information necessary to prosecute his or her claim or defense. Id., 581.
The genesis of this doctrine is grounded in fairness to the opposing party and in a judicial balancing of the costs to the truthful disposition of the litigation against the policies underlying the attorney-client privilege and the work product rule. See Byers v. Burleson, supra, 440; Waste Management, Inc. v. International Surplus Lines, 144 Ill.2d 178, 161 Ill. Dec. 74, 579 A.2d 322 (1991); see also J. Moore, Moore's Federal Practice, 26-60
[6] (2d ed. 1983).
The placing-at-issue rule, however, while finding its justification in principles of fairness and equity, has been criticized as CT Page 5508 eviscerating the full, system-wide benefits of the privileges, and as providing an exception which cannot easily be limited. See Note, Developments in the Law of Privileged Communications, 98 Harv. L. Rev. 1450, 1640-43 (1988). Generally, the courts have been reluctant to pierce the protections provided by the privileges in situations where the nature of the protected communications and the legal effects thereof are not the direct subject of the dispute, but where the communications enter the case as an element of the opposing party's proof of a claim or defense. See Lorenz v. Valley Forge Ins. Co., supra, 1097-98; Handgards, Inc. v. Johnson Johnson, Inc., supra, 929; but see Waste Management, Inc. v. International Surplus Lines, supra. Because there are satisfactory alternative grounds for appropriate resolution of the pending issues, the court declines to apply the "at issue" exception, at this time.
2. The "Cooperation Clause" issue
In their original motion for compliance (before Judge Koletsky) the defendants attempted to procure the withheld documents by invoking the "cooperation clause" contained in the various contracts of insurance entered into by the parties. This clause contains boilerplate language, commonly included in contracts for insurance, which requires the insured to assist the insurer in defending claims against the insured. It is noted that a duty to cooperate may exist even in the absence of an express contractual provision, by virtue of the duty of good faith and fair dealing, which applies to insurance contracts. See Hoyt v. Factory Mutual Liberty Ins. Co., 120 Conn. 156, 159, 179 A. 842 (1935); see also Magnan v. Anaconda Industries, 193 Conn. 558, 566,479 A.2d 781 (1984).
In his earlier order rendered in a bench decision, Judge Koletsky held that the cooperation clause does not apply "unless there is a defense being provided" by the insurer. The existence of the cooperation clause affects the applicability of the attorney-client privilege in two important ways.
First, it is axiomatic that in order for a communication to be protected by the attorney-client privilege, the client must entertain at least a reasonable expectation of confidentiality. State v. Cascone, supra, 186-87, n. 3. Absent indications to the contrary, where an insured is contractually required to assist its insurer in preparing a defense to claims brought against the insured by third parties, the insured cannot in good faith entertain a reasonable expectation that the facts underlying those claims will not be disclosed to its insurer once the claim for coverage is made. "Good faith" has been defined as "honesty in fact," General Statutes42a-1-201 (19), as "honesty of purpose, freedom from intention to defraud," and as "[a]n honest intention to abstain from taking CT Page 5509 an unconscientious advantage of another, even through the forms or technicalities of law . . . ." (Citations omitted). Phillipe v. Thomas, 3 Conn. App. 471, 474-75, 489 A.2d 1056 (1985).
When the claim first arises, insurer and insured are not adverse, but are in privity and share a common interest in minimizing their exposure to legal and monetary liability and, until there is a declaration to the contrary, insurers continue to bear responsibility for settlement and litigation costs in the underlying action. Waste Management v. International Surplus Lines, supra, 335-36. Furthermore, given the fact that the insurer is dependent upon the insured for fair and complete disclosure, see Arton v. Liberty Mutual Ins. Co., 163 Conn. 127, 134, 302 A.2d 284
(1972), and given the fact that the insured is bound to exercise good faith and fair dealing, even if the plaintiff had intended to keep such information confidential, such an expectation would not have been reasonable. Therefore, while these communications may enjoy privileged status as to other parties, they should not properly be privileged as to insurers, who may well bear the ultimate burden of payment, because those communications relating to the underlying claims against the plaintiff were not produced with a reasonable expectation that they would be kept confidential from the insurer. Id. The existence of the cooperation clause bears on a second problem inherent in the plaintiff's work product claims. The work product rule protects an attorney from being forced to disclose files prepared by the attorney in anticipation of litigation. Practice Book 219; Stanley Works v. New Britain Redevelopment Agency, supra, 95. Because the dominant purpose of the work product rule is the protection of the adversary system, see United States v. Nobles, supra, 237-38, and because it is an exception to the general rule permitting discovery, the work product rule appropriately has been given a narrow interpretation consistent with its underlying purposes, see State v. Cascone, supra 186; Falvey's Inc. v. Republic Oil Co., Inc. supra, 932. Faced with a situation similar to that presented here, the Waste Management court noted that:
 In the typical case, material is generated in preparation for trial against an adversary who may seek disclosure of his opponent's work product. Here, the sought-after materials were, in the first instance, prepared for the mutual benefit of insureds and insurers against a third-party adversary . . . . While the work-product materials, had they been requested by the third-party opponent in the underlying lawsuit, would have been entitled to protection, that same protection is not warranted here. This, we firmly believe, was not the situation contemplated by Hickman [v. Taylor] . . . . Insureds here seek to use the doctrine's protection in a manner that is inconsistent with the purpose and intent of the rule . . . To permit the insured's attorney to invoke the work-product rule as a bar CT Page 5510 to discovery in this instance would effectively allow the rule to be used as sword rather than, as intended, a shield.
Waste Management, Inc. v. International Surplus Lines, supra, 330.
Like the situation presented in Waste Management, the instant case does not present circumstances contemplated by Hickman v. Taylor, Stanley Works, or Practice Book 219 because it appears that, at least, some of the materials sought were produced at a time when the parties shared predominantly common, nonadversarial interests and when, indeed, the insured was under a duty to cooperate with the insurer in its defense of the underlying action. Thus, while, ordinarily, materials prepared for an earlier litigation may enjoy work product protection in a subsequent action, see, e.g., Midland Investment Co. v. Van Alstyne, Noel Co.,59 F.R.D. 134 (S.D.N.Y. 1973), in a case in which the parties shared a common interest in the underlying litigation, one characterized by contractual privity, shared exposure, and the duty of cooperation, the parties may not refuse to disclose to one another materials obtained or produced within the scope of their common interest. Furthermore, regardless of whether the duty to cooperate extends to situations where the insurer denies coverage, the work product rule permits sufficient consideration of fairness and equity, see, e.g., Hearn v. Ray, supra, 581-82; Handgards, Inc. v. Johnson Johnson, Inc., supra, 929, to prohibit an insured from simultaneously seeking payment for liability incurred and denying the insurer's right to examine materials related to the underlying claims.
3. Conclusion and Order
As noted above, because the defendants' motion for compliance can be decided satisfactorily on preferable alternative grounds, the court declines to adopt the "at issue" doctrine in this instance. For the foregoing reasons, however, the court does conclude that the attorney-client privilege and work product protection are not applicable to materials generated in connection with the underlying actions against the plaintiff by third parties, for which the plaintiff seeks indemnification and/or defense costs from the defendants under insurance contracts containing provisions requiring cooperation. However, these protections may be available to bar disclosure of any communications or materials generated in preparation for this declaratory judgment action, subject to the principles of applicable law articulated in this memorandum of decision.
The nature of this decision renders it unnecessary to determine whether individual entries presently contained in the privilege log comply with the orders previously rendered by the court, Koletsky, J. CT Page 5511
The court anticipates that the principles and conclusions contained in this decision will provide sufficient guidance to the parties to enable compliance with discovery requests where claims of attorney-client privilege or work product protection have been made. The vast number of such claims effectively prevents judicial resolution of the disputes on an individual basis. Where necessary, special protective orders may be sought with regard to individual documents or information on a limited basis, however.
Accordingly, the court orders the plaintiff to comply with the discovery requests of defendants by applying the principles in this decision. Where a claim of privilege or work product is reasserted, the reason for such assertion must be accompanied by a reference to the principles articulated in this decision, together with factual representations sufficient to enable the court to determine the issue. Correspondingly, any subsequent motions to compel dealing with claims of privilege or work product shall also refer to the principles articulated herein. In the event that, hereafter, an issue of privilege or protection under the work product doctrine arises in a context reasonably governed by this decision, and a party either asserts the attorney-client privilege or work product protection or claims the unavailability thereof in contravention of the principles of this decision, sanctions may be requested by any affected party to the action.
CT Page 5511